CASE 50—PETITION EQUITY—NOVEMBER 20.

# Southern Building and Loan Association v. Norman, Auditor.

### APPEAL FROM FRANKLIN CIRCUIT COURT.

1. CONSTITUTIONAL LAW—TAXATION OF FOREIGN BUILDING AND LOAN ASSOCIATION.—Section 4228 of the Kentucky Statutes, which requires every foreign building and loan association doing business in this State to pay into the treasury annually $2 on every $100 of its gross receipts is not in violation of either the State or Federal Constitution.

2. SAME.—Such a statute does not impose a tax upon the property of the association, but upon the franchise of doing business in this State, and is, therefore, not in violation of section 174 of the State Constitution.

3. SAME.—The tax being in effect a franchise tax the complaint can not be made that the property of the corporation is otherwise taxed or is non-taxable.

4. SAME.—But in fact the statute does not impose double or unequal taxation , for while subscribers for paid-up stock pay on their shares the company pays no annual tax thereon, as it pays only once on the gross receipts for any given year.

5. SAME.—The obligation of contracts of subscription made before the law was passed are not impaired by the statute, as there is no attempt to tax the property of the corporation.

6. SAME.—As the statute by its express terms affects only business done within the State it is not a regulation of inter-State commerce.

7. SAME.—The imposition of a tax upon a foreign corporation for the privilege of doing business in this State is not a violation of the Federal Constitution. And the fact that a particular foreign corporation entered the State before any law was enacted to tax its privileges does not preclude the State from imposing a reasonable tax on its right to transact business, and rating it according to the amount of business done after the enactment of the law.

8. SAME.—As the statute imposes the same burden on all corporations similarly situated it does not deny to any the equal protection of the laws.

Southern Building and Loan Association v. Norman, Auditor.

9. SAME.—The imposition of a charge of $25 on the agent of the corporation—fixed on all alike—does not affect the right to impose the tax in question.

10. SAME.—Whether or not the State may in the matter of taxation discriminate against foreign corporations as between them and domestic corporations ( a question not necessary to be decided), it may adopt different plans for the taxation of the two classes, as such a difference does not necessarily imply a discrimination against either.

KNOTT & EDELEN FOR APPELLANT.

1. Sections 4228 and 4229 of the Kentucky Statutes violate section 174 of the Constitution, which was supposed to guarantee absolute equality of taxation.

(a) The two per cent. exacted of appellant on its gross receipts is in its essentials a *tax* on its business. A license is a permission to do business *in the future*, while a tax is an exaction on present values or past business. (Definitions of "License," Bouvier's Law Dictionary; Am. & Eng. Enc. of Law.)

(b) The exaction of two per cent. in addition to the tax upon the shares provided for by section 4093 of the Kentucky Statutes is double taxation.

(c) From the standpoint of appellant company its claim on the individual subscriber is a chose-in-action, and the situs of choses-in-action for the purpose of taxation is the residence of the creditor and not that of the debtor. Taxation does not take hold of liabilities. (Trustees of Eminence v. Deposit Bank of Eminence, 12 Bush, 538.)

2. The statute in question operates as to existing subscriptions to impair the contract of subscription. (DeVignier v. City of New Orleans, 16 Fed. Rep., 11; Murray v. Charleston, 96 U. S., 433.)

3. The statute operates to impair that freedom of commercial intercourse between the States which is attempted to be conserved by the Constitution of the United States. (Gibbons v. Ogden, 9 Wheaton, 1; Pensacola T. Co. v. W. U. Tel. Co., 96 U. S., 1; Tel. Co. v. Texas, 105 U. S., 464; Commonwealth v. Smith, 92 Ky., 38; Fecheimer Bros. v. City of Louisville, 84 Ky., 306; Fire Ass'n v. New York, 7 Sup. Ct. Rep., 113.)

4. The State having permitted the appellant to come into the State and transact business, it is a denial of the equal protection of the laws to exact from it two per cent. of its business under the guise of taxation.

Southern Building and Loan Association v. Norman, Auditor.

W. G. BULLITT on same side.

1. The statutes in question are in violation of sections 172 and 174 of the Constitution.

While exact equality of taxation can not be expected, yet if the logical effect of the taxing law will result in unequal taxation, or if it appears from the taxing law the object is to impose unequal taxation, it is the duty of the court to interpose its power to relieve those imposed on. (Lexington v. McQuillan's Heirs 9 Dana, 573; Louisville v. Hyatt, 2 B. Mon., 177; Howell v. Bristol, 8 Bush, 493.)

2. A revenue tax may be assessed in form of a license tax, but whenever a revenue tax is assessed on the basis of a license tax, an *ad valorem* tax can not also be assessed on the same property. (Bamberger, Bloom & Co. v. Louisville, 82 Ky., 337.)

3. A police regulation tax, whether in the form of a license tax, stamp tax, inspection tax, or in whatever form it may be imposed, is always in addition to the revenue tax, but whenever such regulation exceeds the cost of regulation it becomes double taxation, and is void. (Collins v. Louisville, 2 B. M.; 137.)

4. A police regulation license tax is authorized only on property used in a business that requires regulation, or on the business itself requiring police regulation. (Livingston v. Paducah, 80 Ky., 656.)

5. Shares of stock are not property of the corporation, but certificates of debts due by the corporations to the holders of such stock. (Trustees of Eminence v. Deposit Bank, 12 Bush, 538.)

6. The two dollars on the hundred dollars of the gross receipts can not be a tax based on *license*, because sections 267 and 271 of the the revenue law (acts 1891-2-3, pp. 732, 733), fully provide for the license tax; and it can not be a tax based on *franchise*, because this State granted no franchise to appellant, except the license to do business in the State provided for in the sections aforesaid.

7. The sections in question operate to impair the obligation of contracts.

WM. J. HENDRICK, Attorney-General, for appellee.

1. There is no want of uniformity and equality in the method of taxation adopted by the legislature. The legislature is the judge of this and this court will not interfere, unless the discrimination is palpable.

2. The Commonwealth could, if it so desired, exclude the company from the State.

When a company or individual sends or brings property into the State it submits the property to the law of the sovereignty. (Green v. Van Buskirk, 5 Wall.)

3. The law is not an interference with interstate commerce. (Covington Bridge v. Commonwealth, 154 U. S.,)

4. The act is not in conflict with the contract clause of the Federal Constitution.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

This appeal involves the constitutionality of the statute requiring every foreign building and loan association doing business in the State to pay into the treasury annually $2 on every $100 of its annual gross receipts. (Kentucky Statutes, section 4228.)

The law is assailed as being, (1), in violation of section 174 of the State constitution; (2), as impairing the obligation of contracts in existence when the law became operative; (3), as an unwarrantable interference with the freedom of commerce between the States; and (4), as denying to the association the equal protection of the laws.

It is apparent that a brief inquiry into the nature of the business done by the association is pertinent to a proper understanding of each of these contentions, and especially in so far as the business is supposed to be affected with an interstate character. We say brief inquiry because the general characteristics of these associations are alike, and in recent years have become well known.

The appellant's principal office is at Knoxville, Tennessee. Its course of business is this: Each subscribing member contracts to contribute each month a stated sum, which the company agrees to invest on bond and mortgage, collecting the interest monthly and reinvesting at frequent intervals the entire moneys received from all sources for the benefit of the stockholders, share and share alike. These contribu-

tions are made at the rate of sixty cents per month on each share of stock subscribed for until the time when such installments and their accumulations shall amount to the sum of $100 for each share. This period is approximately seven years.

Prior to the 11th of November, 1892, when the law in question became operative, none of the stock had matured, though the appellant had been doing business in the State and had made numerous contracts. From the date named until June 1, 1893, the gross receipts of the association were $93,057.60, but how much of this was old and how much was new business does not appear.

(1). Is the statute in conflict with section 174 of the State constitution? The section reads as follows: "All property, whether owned by natural persons or corporations, shall be taxed in proportion to its value, unless exempted by this constitution; and all corporate property shall pay the same rate of taxation paid by individual property. Nothing in this constitution shall be construed to prevent the General Assembly from providing for taxation based on income, licenses or franchises."

In this connection it is pertinent to read a portion of section 181 of the same instrument: "The General Assembly may, by general laws only, provide for the payment of license fees on franchises, stock used for breeding purposes, the various trades, occupations and professions, or a special or excise tax."

It is said that the imposition of the levy of two per cent. on the gross receipts of the association is not in the nature of a license tax, because, as those terms imply, such a tax is enforced to obtain a license to do business in the future, and can not, in the nature of things, be an exaction on past business. A license, it is said, is a permission, and the payment of

a license tax proper is required as a condition precedent to doing a business otherwise prohibited. It is not an income tax, because the company has no property out of which an income may arise, and it is not a franchise tax, it is said, because the State has granted no franchise, that being a grant 'of another sovereignty.

The conclusion is reached, therefore, that the statute imposes a tax on the business of the association. As this business in this State consists solely in selling shares of stock to Kentucky members, it is manifest the company can have no gross receipts except from payments made by its Kentucky subscribers. These subscribers, under section 4093, Kentucky Statutes, are required to pay taxes on their shares of building and loan association stock as on other individual personal property. Therefore, say counsel, undisguised double taxation, and hence taxation not in proportion to its 'value, is imposed, not as sometimes unavoidably happens on the same property in the hands of different owners, but double taxation of the same property in the hands of the same owners, because the association is a purely mutual one, and the assets belong exclusively to the shareholders.

The fallacy of the argument, it seems to us, lies in the assumption that this statute imposes a tax on property at all. Certainly it is not an *ad valorem* tax. The associations of the kind described generally have no tangible property within the State, and we do not regard the purpose of the statute to be to force an artificial situs on the obligations due the association from its members for stock, dues, etc. Indeed those contracts can not be said to have any certain value. The members owe the contracts of subscription, it is true, but upon notice they may retire from membership and withdraw the value of their payments, subject to conditions not necessary to notice. The business, nevertheless, is a valua-

able one, and it is for the privilege of doing this business that the tax is imposed. It is not a tax on the corporate franchise, for the conclusive reason that the State does not grant this, but it is a tax on the franchise of doing business in this State, and in this sense a franchise tax. It is true the amount of the gross receipts of the company is taken as the measurement of the tax, but this is only the adoption of a fair and just standard. Such taxes may be measured by dividends, by the amount of the capital stock, by the extent of the business transacted, by the net earnings, by the gross receipts, etc.

In the earlier cases a tax upon the gross receipts of a railroad company was held not to be a direct tax on the property, but a tax upon the franchise of the corporation, measured by the extent of its business. (State Tax on Railway Gross Receipts, 15 Wall., 284.) But subsequently the same court, in Fargo v. Michigan, 121 U. S., 230, and Philadelphia, &c. v. Pennsylvania, 122 U. S., 326, modified or rather denied the right of the State to thus tax an interstate agency under such a guise.

With this feature of the taxing power, however, we have nothing to do here. To the extent that such a claim is urged by counsel we shall notice presently. Regarded as a tax for doing business in the State, we see at once that the plea of want of uniformity and failure to tax in proportion to value becomes unavailing. So also the contention that there is double taxation. If the tax is found to be in effect a franchise tax, the complaint can not be made that the property of the corporation is otherwise taxed or is non-taxable. (Society for Savings, &c. v. Coite, 6 Wall., 594; People v. Home Ins. Co., 92 N. Y., 328.)

In our opinion, however, there is, in fact, no unequal or double taxation imposed. So far as borrowing members are

concerned they do not list their shares for taxation, and, while the subscribers for paid-up stock pay on their shares as on other individual property, the company pays no annual tax on these shares. After paying on its gross receipts for any given year, it never again pays on the receipts of that year. It never receives them again. The one payment exhausts the force of the statute for all time.

(2.) Counsel say that, viewed from the standpoint of the company, the subscriptions may be regarded as choses in action, and, having no situs in this State except the artificial one created by this statute, the contracts of subscription, made before the law was passed, are impaired to the extent of the tax imposed.

In De Vignier v. City of New Orleans, 16 Federal Rep., 11 (the case relied on by counsel), it was held that "in the absence of any provisions of the statute which had entered into and formed part of the contract, giving the right to impose a tax, bonds, or other obligations of a city which belong to non-residents, can not be taxed without impairing the force of the obligation itself."

But we have seen that there is no purpose here to tax the property of the corporation or impart to its property a forced location contrary to the settled rules which govern that class of property. The principle announced in the case is not applicable.

Finally (3 and 4) it is said that the freedom of commerce between the States is interfered with, and the equal protection of the laws denied the corporation.

The statute, whatever may be said of the nature of the tax it imposes, in express terms affects only business done within the State. The business traffic or commerce, if you please so to term it, of the corporation is purely internal or domestic.

Having under consideration the validity of a tax imposed on a Nebraska Express Company by a Missouri statute similar to the one now in question, the Supreme Court, by Justice Lamar, after quoting the statute, said: "It is manifest that these provisions of the statute, so far from imposing a tax upon the receipts derived from the transportation of goods between other States and the State of Missouri, expressly limit the tax to receipts for the sum earned and charged for the business done within the State. This positive and oft-repeated limitation to business within the State, that is, business begun and ended withtin the State, evidently intended to exclude, and the language employed certainly does exclude, the idea that the tax is to be imposed upon the interstate business of the company. 'Business done within the State' can not be made to mean business done between that State and other States." (Pacific Express Company v. Seibert, 142 U. S., 339.)

This case is decisive also of other contentions made by the appellants here. The tax under consideration was one on the gross receipts of a foreign corporation, and it was contended that the act violated "the requirements of uniformity and equality of taxation prescribed by the constitution of Missouri, and thereby denied to the complainants the equal protection of the laws of the State, which the fourteenth amendment to the constitution. guarantees shall not be abridged by State action."

The court said that it had repeatedly "laid down the doctrine that diversity of taxation, both with respect to the amount imposed and the various species of property, selected either for bearing its burdens or for being exempt from them, is not inconsistent with a perfect uniformity and equalty of taxation in the proper sense of those terms." (Citing Bell's Gap Railroad v. Pennsylvania, 134 U. S., 232,

237, and Home Insurance Co. v. New York, 134 U. S., 594, 606-7.)

The perfect application of these principles to the case at hand becomes apparent when we observe the substantially perfect identity between our statute and the Missouri statute. For not only was the complainant a foreign corporation, and the tax one on its gross receipts on business done in the State, but the rate was $2 on the $100 of such receipts taken in for one year next preceding a time certain fixed in the statute.

The court further proceeds to demonstrate that the manner of taxing the express company, which had no tangible property in the State of consequence, was necessarily different from that of other corporations, but there was no unjust discrimination on that account.

We may observe here that the burdens imposed on appellant by the statute under consideration are substantially the same as those imposed on other similar corporations similarly situated.

In the case of Philadelphia Fire Association v. New York, 119 U. S., 110, relied on by the appellant, the plaintiff in error was a fire insurance company of Pennsylvania, doing business in the State of New York, and the question was. what effect the fourteenth amendment of the constitution should be given in the matter of taxing the foreign corporation? The court first decided that "issuing a policy of insurance is not a transaction of commerce."

The case of Paul v. Virginia, 8 Wall., 168, was also distinctly approved. wherein it was said: "Having no absolute right of recognition in other States, but depending for such recognition and the enforcement of its contracts upon their assent, it follows as a matter of course that such assent may be granted upon such terms and conditions as those States

may think proper to impose. They may exclude the foreign corporation entirely, they may restrict its business to particular localities,or they may exact such security for the performance of its contracts with the citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion." And a tax of 3 per cent. on the premiums received by the complaining company in the State of New York for a given year was upheld, because a like tax had been imposed on New York insurance companies doing business in Pennsylvania. The court also approved its former decision in Ducat v. Chicago, 10 Wall., 410, where it was said "that the power of a State to discriminate between her own corporations and those of other States desirous of transacting business within her jurisdiction being clearly established, it belonged to the State to determine as to the nature or degree of discrimination, 'subject only to such limitations on her sovereignty as may be found in the fundamental law of the Union.' "

The right to impose the tax in the case at hand does not depend, it seems to us, on its being paid as a condition precedent to the entrance of the corporation into the State. If the corporation, by the diligence of its agents, entered the State before any law was enacted to exclude it, or tax its privileges, it still can not be said that the State assented to such entrance or gave it any official recognition, whereby it was precluded from imposing a reasonable tax on its right to transact business, and rating it according to the amount of business done after the enactment of the law.

It was at last a tax on the privilege of doing business after the enactment of the law, and its collection postponed in order that the sum of it might be fixed with regard to the amount of business done. It might have been fixed without regard to such amount.

We do not think that the imposition of the charge of $25 on the agent of the corporation, fixed on all alike, affects the right to impose the tax in question.   This was in the nature of a fee for the license, not exceeding the cost of its issual and the regulations with respect thereto.

It may be observed finally that while the language of some of the cases cited and others not referred to sustain the position that the State may favor its own corporations or impose a less tax on them than on foreign ones, the assertion of that principle is not necessary here to sustain the statute in question.   It does not follow, because different plans of taxation are adopted with respect to the two classes, that there is a discriminaton against either.   It is practically impossible to compare a tax rate, fixed on property on the *ad valorem* system, wth a rate fixed without reference to the value of property, but as a tax on the privilege of doing business.   But an examination of our various statutes will, we think, show no discrimination against the nonresident corporation.

The judgment dismissing the petition is affirmed.