WESTERN UNION TEL. CO. v. NORMAN, Auditor.

(Circuit Court, D. Kentucky. June 8, 1896.)

1. CIRCUIT COURT—JURISDICTIONAL AMOUNT.
    The circuit court has jurisdiction, where the citizenship is diverse, of a bill by a telegraph company to enjoin a state auditor from collecting an alleged illegal tax claimed to be due to the state, and from certifying to the county clerks the proportion of local taxes to be collected in each county, when it appears on the face of the bill that the amount claimed to be due to the state, and also the aggregate amount of such local taxes, exclusive of interest and costs, exceeds $2,000.

2. SAME—EQUITY JURISDICTION.
    The equity jurisdiction of the federal courts, in the case of a bill by a telegraph company to enjoin a state auditor from certifying to the various county clerks the proportions of an alleged illegal tax to be collected in their several counties, is sustainable on the ground of preventing a multiplicity of suits, and because of irreparable injury, where such local taxes, taken separately, would be less than $2,000. Telegraph Co. v. Poe, 61 Fed. 469, and Sanford v. Poe, 16 C. C. A. 305, 69 Fed. 546, followed.

3. STATE TAXATION—INTERSTATE COMMERCE.
    A state cannot tax interstate or foreign commerce as such, nor can it tax its agencies or instrumentalities in such a manner as to interfere with the regulation of this commerce, which belongs exclusively to congress. But a state may tax property within its limits, though it be employed in whole or in part in foreign or interstate commerce.

4. SAME—KENTUCKY STATUTE.
    The provision in the Kentucky Statutes of 1894 (section 4077), that certain classes of corporations and companies shall, in addition to the other taxes imposed by law, "pay a tax on its franchise," etc., when construed in connection with the subsequent sections, providing the method of ascertaining the value of such "franchise," means a tax, not on the corporate

franchise, in the technical meaning of that term, but upon all the intangible property of the corporation, or, in the case of foreign corporations engaged in interstate commerce, upon such proportion thereof as the length of their lines in the state bears to the total length of the lines operated by them. Therefore the statute is not in violation either of the interstate commerce clause of the federal constitution, or the fourteenth amendment. W. U. Tel. Co. v. Attorney General of Massachusetts, 8 Sup. Ct. 961, 125 U. S. 530; Railway Co. v. Backus, 14 Sup. Ct. 1122, 154 U. S. 439; Sanford v. Poe, 16 C. C. A. 305, 69 Fed. 546, applied.

5. SAME—DISCRIMINATION—INTANGIBLE PROPERTY.
A tax upon intangible property of a corporation, which is of such a nature that it could not be owned by an individual, is not a violation of section 174 of the Kentucky constitution, which provides that "all property, whether owned by natural persons or corporations, shall be taxed in proportion to its value, and all corporate property shall pay the same rate of taxation paid by individual property."

6. TAXATION—DISCRIMINATION
Section 4077, St. Ky. 1894, provides that certain specified classes of corporations and companies, "and also every other like company, corporation, or association, and every other corporation, company, or association having or exercising any special or exclusive privilege or franchise, or performing any public service, shall, in addition to the other taxes imposed on it by law, annually pay a tax on its franchise," etc. *Held*, that this includes all corporations, of whatever kind, and is not confined to such as are of like character to those specifically named, and, consequently, that there is no discrimination in such taxation.

7. SAME.
The provisions of section 4020, St. Ky. 1894, when taken in connection with the schedule which each taxpayer is required by section 4058 to return, show no intention to exempt from taxation the intangible property of any individuals or corporations; and hence the tax imposed by sections 4077, 4078, on the intangible property of corporations, including their franchises, is not in violation of the state constitution, on the ground of discrimination or inequality.

This was a bill in equity by the Western Union Telegraph Company against L. C. Norman, auditor of public accounts of the state of Kentucky, seeking to enjoin him from attempting to collect a certain tax assessed against the complainant for the state, and from certifying to the county clerks the assessment to be collected in each county.

The bill demurred to is as follows:

"[Title of Court and Cause.]   Bill in Equity.

"To the Judges of the Circuit Court of the United States for the District of Kentucky:

"The Western Union Company, a corporation duly organized and existing under the laws of the state of New York and a citizen of said state, brings this its bill against L. C. Norman, a citizen and resident of the state of Kentucky, and auditor of public accounts of said commonwealth, and thereupon your orator complains and says:

"That your orator is, and for many years last past has been, engaged in the business of transmitting intelligence by means of electricity between points in America and Europe, and between towns and cities and villages in the United States, including the state of Kentucky, and owns and uses in said business telegraph lines extending all over the United States, including the state of Kentucky, and lines of cable across the Atlantic Ocean, and employs thousands of persons constantly in the conduct of said business. On June 5th, 1867, your orator duly accepted the provisions of the act of congress, passed July 24th, 1866, entitled 'An act to aid in the construction of telegraph lines and to secure to the government the use of the same for postal, military and other purposes,'

and all of its telegraph lines in the state of Kentucky, which it owns, operates, or controls, are constructed upon post roads of the United States. On November 11, 1892, the general assembly of the commonwealth of Kentucky enacted a law now known and hereafter referred to as 'Chapter 108,' being sections 4019 et seq. of the Kentucky Statutes of 1894. Said act provides (articles 1 and 2) for the taxation of your orator, in common with persons and companies generally, upon all of its property, real and personal, of every kind and nature, including its telegraph lines and moneys and credits held or owned by it within the commonwealth of Kentucky, for state, county, municipal, and other purposes, according to the fair cash value of said property. All of said taxes have been duly assessed and paid by your orator, and it makes no complaint thereof. But articles 3 and 4 of said act provide (section 4077) that every telegraph company, and also certain other companies named in said section, 'shall in addition to the taxes imposed on it by law pay annually a tax on its franchise to the state and a local tax thereon to the county, incorporated city, town or taxing district where its franchises may be exercised.' The place or places where such local taxes are to be paid, and how apportioned, are determined by the auditor, treasurer, and secretary of state, who are constituted by the act a board of valuation and assessment for that purpose. In the case of a telegraph company, such as your orator, whose lines extend beyond the limits of the state, said state board is directed (section 4081) to fix the value of your orator's capital stock, and it is thereupon declared, in said section, that that proportion of the value of the capital stock which the length of the lines operated, owned, leased, or controlled in this state bears to the lines owned, leased, or controlled in this state and elsewhere, shall be the value of the corporate franchise of such corporation liable for taxation in this state; and such corporate franchise shall be liable for taxation in each county, incorporated city, town, or district through or into which such lines pass or is operated, in the same proportion that the length of the line in such county, city, town, or district bears to the whole length of the line in the state, less the value of any tangible property assessed or liable to assessment in any such county, city, town, or taxing district. So that under said act your orator is taxed for state, county, municipal, and other purposes, not only upon all of its property within the state, to which it does not object, but is also declared to be taxable upon that proportion of the value of its capital stock which the length of its lines in Kentucky bears to the length of its lines throughout the world, upon the claim or pretense that the company enjoys or exercises some franchise in the state of Kentucky which is subject to taxation by that state. In order to enable said board to determine the value of said pretended franchise, your orator was required to, and did, make and deliver to the defendant, between September 15th and October 1st, 1893, a verified statement, in the form prescribed by the auditor, showing, so far as it could, the facts required by sections 4078 and 4079 concerning its business, shares, property, income, and lines, including the number and amount of its shares; the highest price at which they had sold at a bona fide sale within twelve months preceding September 15th; the amount and kind of its tangible property in the state, where situated, assessed, or liable to assessment in the state, and the fair cash value thereof, to wit, $191,976.91; the length of the entire lines operated, owned, leased, or controlled in the state, to wit, 8,647 miles, and in each county, incorporated city, town, or taxing district; and the entire line operated, controlled, leased, or owned elsewhere, to wit, 189,576 miles. Your orator accompanied said statement and report with an express notification to the defendant that the report was made and delivered under protest, upon the ground that the statute requiring the same was invalid, because in contravention of the constitution of the United States. Said board thereupon fixed the valuation of your orator's alleged franchise, in accordance with the provisions of said act, at the sum of $1,042,020, and has notified the company that such sum would be assessed against it as a franchise tax. The amount of taxes payable to the state upon said assessment is 42½ cents on every $100 thereof, and the total tax, including the various local taxes assessable thereon, will amount to about $10,000. All of your orator's property, including its telegraph lines, moneys, and credits within the state of Kentucky, have been duly returned and assessed for taxation for state, county, municipal, and other purposes by the taxing officers of the various localities through which said telegraph lines pass, or in which said property is situated, at the fair cash value thereof, which does not exceed the

sum of $192,976.91, and the taxes thereon have been duly paid. Your orator has, and on the 15th day of September had, no other property in the state of Kentucky subject to the taxing jurisdiction of that state. The principal business done by your orator in the state of Kentucky is interstate commerce, to wit, the transmission of telegraphic messages between points in that state and points in other states, and across said state between points in other states, although a portion, comparatively small, of its business in Kentucky, does consist of transmitting messages from one point to another in that state.

"Your orator holds no franchise from the state of Kentucky, being incorporated alone under the laws of the state of New York. Your orator, therefore, insists that said statute of the commonwealth of Kentucky is in contravention of the interstate commerce clause of the constitution of the United States, because it attempts to enforce against your orator the payment of a tax for the privilege of carrying on its business in said state, which is principally interstate commerce, and also as an agency of the United States in the transmission of messages for the government, and that said statute is therefore a tax upon and a regulation of interstate commerce and of said business done for the government of the United States. Said tax is not, and does not purport to be, a tax against your orator in respect of its property in the state of Kentucky, and subject to the taxing jurisdiction of that state, but is, and is declared to be, a franchise tax, in addition to the tax assessed against it upon all of its property within the state. If, however, the act can be construed as one for the taxation of your orator's property in the state of Kentucky, your orator insists that the act is, nevertheless, in contravention of the constitution of the state of Kentucky, and particularly of section 174 and of section 172, which provides that 'all property whether owned by natural persons or corporations shall be taxed in proportion to its value, unless exempt by the constitution and that all corporate property shall pay the same rate of taxation as is paid by individual property,' and is also in contravention of the interstate commerce clause and of the fourteenth amendment of the constitution of the United States, for the reason that it attempts to tax property that is not within the taxing jurisdiction of the state, and to value and assess property within the state, for purposes of taxation, unequally and otherwise than upon the basis of its value as property. Your orator owns personal property in the state of Kentucky, including its telegraph lines, office furniture, appurtenances, and money and credits, of the value of $192,976.91. It did own the same on September 19, 1893, and it then owned no other property in said state; and all of its property has been duly returned and assessed for taxation, and the taxes thereon have been paid. The entire length of the lines of telegraph leased or controlled by your orator in Kentucky on September 15th was 8,647 miles. The entire length of its lines in other states and countries, including the Atlantic cables, was 189,576 miles. Your orator submits that a fair valuation of its property in the state of Kentucky, which consists entirely of said telegraph lines and appurtenances, cannot be ascertained, even approximately, by applying the proportion which such mileage in Kentucky (——— miles) bears to its entire mileage throughout the world, upon the valuation of all the shares of the company, whether such valuation be a stock exchange value or the actual value of such shares, because such valuation includes elements of value not existing in the state of Kentucky, and not taxable by it, and because your orator's telegraph lines are not of uniform value per mile. Thousands of miles of its telegraph lines lie in cables under the high seas, which cost from three thousand to four thousand dollars per mile. In the more densely-settled portions of the country, like Massachusetts, New York, Pennsylvania, and New Jersey, where, also, your orator's trunk lines are very large, the cost per mile of poles is much greater than in the state of Kentucky, where the lines are light, and built through a sparsely-populated region. A considerable mileage of your orator's lines lies in underground conduits, where the cost per mile greatly exceeds that in Kentucky. In the Far West of the United States the necessity of transporting poles and wires from the East adds largely to the cost per mile of line, and many thousands of miles of line have been built in advance of the railroads, and at a great cost of transportation, by wagons, across the plains and mountains. The federal and foreign franchises, contracts, and patent rights held and enjoyed by your orator, none of which exist in the state of Kentucky,

or enter into the value of the property there situated, are of very great value, and your orator has large investments in bonds and stocks of other corporations, principally telephone companies and local telegraph companies, none of which are situated in Kentucky, or taxable in said state; all of said bonds and stocks being held in your orator's treasury, in the state of New York. Said bonds and stocks are of the value, in the aggregate, of $7,633,-230.12. Your orator also has large investments in real estate in New York City and Chicago, and other states and towns in the United States and Canada, of the value of more than $5,013,326.64, none of which is situated in the state of Kentucky, or taxable by that state. Any apportionment to Kentucky of the capital stock of the company on the mileage basis will, therefore, necessarily include the value of such shares, bonds, real estate, federal and foreign franchises, contracts, and patent rights, all of which are without the taxing jurisdiction of the state of Kentucky. Your orator's income is derived, not merely from the use of personal and real estate in the conduct of its business, but it employs in said business the personal services of thousands of persons skilled in the business of telegraphy, and your orator's net income, and therefore the market and actual value of its shares, depend in a great measure upon the fidelity and skill with which their duties are performed; and a tax based upon such market value, or upon the income of your orator, must therefore rest largely upon the services rendered and income derived outside of the state of Kentucky, and not subject to the taxing jurisdiction of said state. Moreover, the market or exchange price of your orator's shares is speculative and variable, depending upon financial and other conditions not at all connected with your orator, its business, or its property, and does not, therefore, afford any proper, reasonable, or just criterion for estimating the value of your orator's property. Your orator's gross earnings throughout its entire system, for the year ending September 15th, 1893, were $24,095,625.83, and its income for the same period was $6,464,583.83. Its gross receipts in Kentucky, including its receipts from interstate business as well as local business, were $351,183.90. Its gross receipts during the same period upon business done wholly within the state of Kentucky were $72,-410.75. Your orator is not able to state the total expense of said business so done in Kentucky, but it is estimated by your orator at from $250,000 to $300,000. So that the proposed tax upon said alleged franchises would require your orator to pay, in the state of Kentucky, more than 90 per cent. of its net income in the state from all of its business, including interstate commerce,—a rate of taxation which will be substantially destructive of your orator's business. The amount of business done per mile in many parts of the country greatly exceeds the amount per mile done in Kentucky, and the profit gained by your orator upon its business per mile in Kentucky is much less than its profits upon its business per mile in many other states and countries, and is considerably less than its average profit per mile.

"Said act (section 4091) provides as follows: 'All taxes assessed against any corporation, company or association under this article, except banks and trust companies, shall be due and payable thirty days after notice of same has been given to said corporation, company or association failing to pay its taxes, after receiving thirty days notice shall be deemed delinquent, and a penalty of ten per cent. on the amount of the tax shall attach, and thereafter such tax shall bear interest at the rate of ten per cent. per annum; any such corporation, company or association failing to pay its taxes, penalty and interest, after becoming delinquent, shall be guilty of a misdemeanor, and on conviction, shall be fined fifty dollars for each day the same remains unpaid, to be recovered by indictment, or civil action, of which the Franklin circuit court shall have jurisdiction.' The defendant claims that your orator is delinquent, and that by virtue of the provisions of said act it is liable to the onerous penalties declared by the act, and is threatening to proceed to enforce and collect said tax and said penalties, and, unless restrained by the order of this court, the defendant will apportion and certify to the county clerks of more than sixty-eight counties of the state the proportionate amount of said assessment, in accordance with said act; and the county clerks will certify to each county, city, town, or taxing district in which your orator does business the portion thereof taxable in each of said cities, towns, or taxing districts in each of said counties for collection; and your orator will

suffer irreparable injury, and will be subjected to a multiplicity of vexatious suits and prosecutions, and to an illegal lien upon its property within the state. To the end, therefore, that your orator may not be subjected to the multiplicity of suits which would otherwise be necessary, and that it may be spared irreparable injury, and that its property in the state may not be subjected to an illegal cloud and lien, your orator prays for a writ of subpœna against L. C. Norman to appear and make full and true answer to this bill (but not under oath, answer under oath being hereby waived), and that an injunction pendente lite be granted commanding him to refrain from certifying said valuation or assessment, or any part thereof, to any county clerk of said state, and to refrain from collecting or attempting to collect any of said taxes alleged to be due to the state of Kentucky under said assessment, until the final order and determination of this court, and that upon such final hearing a decree may be made perpetually enjoining said defendant from making said certification, and from collecting any of said taxes or penalties, and for all other proper relief to which your orator may be entitled."

The Kentucky law applicable to the questions raised is this:

Chapter 108, § 4019: "An annual tax of forty-two and one-half cents upon each one hundred dollars of value of all property directed to be assessed for taxation, as hereinafter provided, shall be paid by the owner, person or corporation assessed."

Section 4020: "All real and personal estate within this state and all personal estate of persons residing in this state, and of all corporations organized under the laws of this state, whether the property be in or out of this state, including intangible property, which shall be considered and estimated in fixing the value of the corporate franchises as hereinafter provided, shall be subject to taxation unless the same be exempt from taxation by the constitution, and shall be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale."

Section 4077: "Every railway company or corporation, and every incorporated bank, trust company, guarantee or security company, gas company, water company, ferry company, bridge company, street railway company, express company, electric light company, electric power company, telegraph company, press dispatch company, telephone company, turnpike company, palace car company, dining car company, sleeping car company, chair car company, and every other like company, corporation or association, also every other corporation, company or association having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons, or performing any public service, shall, in addition to the other taxes imposed on it by law, annually pay a tax on its franchise to the state and a local tax thereon to the county, incorporated city, town and taxing district where its franchise may be exercised. The auditor, treasurer and secretary of state are hereby constituted a board of valuation and assessment for fixing the value of said franchise * * * the place or places where such local taxes are to be paid * * * by corporations on their franchise, and how apportioned where more than one jurisdiction is entitled to a share of such tax, shall be determined by the board of valuation and assessment and for the discharge of such other duties as may be imposed upon them by this act. The auditor shall be chairman of said board, and shall convene the same from time to time, as the business of the board may require."

Section 4078: "In order to determine the value of the franchises mentioned in the next preceding section, the corporations, companies and associations mentioned in the next preceding section, except banks and trust companies, whose statements shall be filed as hereinafter required by section four thousand and ninety-two of this article, shall, annually between the 15th day of September and the 1st day of October, make and deliver to the auditor of public accounts of this state a statement, verified by its president, cashier, secretary, treasurer, manager, or other chief officer or agent, in such form as the auditor may prescribe, showing the following facts, namely: The name and principal place of business of the corporation, company or association; the kind of business engaged in; the amount of the capital stock, preferred and common; the number of shares of each; the amount of stock paid up;

the par and real value thereof; the highest price at which such stock was sold at a bona fide sale within twelve months next before the 15th day of September of the year in which the statement is required to be made; the amount of surplus funds and undivided profits, and the value of all other assets; the total amount of indebtedness as principal; the amount of gross or net earnings or income, including interest on investments, and incomes from all other sources for twelve months next preceding the 15th day of September of the year in which the statement is required; the amount and kind of tangible property in the state; and where situated, assessed or liable to assessment in this state, and the fair cash value thereof, estimated at the price it would bring at a fair voluntary sale, and such other facts as the auditor may require."

Section 4079: "Where the line or lines of any such corporation, company or association extend beyond the limits of the state or county the statement shall in addition to the other facts hereinbefore required, show the length of the entire lines operated, owned, leased or controlled in this state, and in each county, incorporated city, town or taxing district, and the entire line operated, controlled, leased or owned elsewhere. If the corporation, company or association be organized under the laws of any other state or government, or organized or incorporated in this state, but operating and conducting its business in other states as well as in this state, the statement shall show the following facts, in addition to the facts hereinbefore required: The gross and net income or earnings received in this state and out of this state, on business done in this state, and the entire gross receipts of the corporation, company or association in this state and elsewhere during the twelve months next before the 15th day of September of the year in which the assessment is required to be made. In cases where any of the facts above required are impossible to be answered correctly, or will not afford any valuable information in determining the value of the franchises to be taxed, the said board may excuse the officer from answering such questions; provided that said board from said statement, and from such other evidence as it may have, if such corporation, company or association, be organized under the laws of this state shall fix the value of the capital stock of the corporation, company or association as provided in the next succeeding section, and from the amount thus fixed shall deduct the assessed value of all tangible property assessed in this state, or in the counties where situated. The remainder thus found shall be the value of the corporate franchise subject to taxation as aforesaid."

Section 4080: "If the corporation, company or association be organized under the laws of any other state or government, except as provided in the next section, the board shall fix the value of the capital stock as hereinbefore provided, and will determine from the amount of the gross receipts of such corporation, company or association in this state and elsewhere, the proportion which the gross receipts in this state, within twelve months next before the 15th day of September of the year in which the assessment was made, bears to the entire gross receipts of the company, the same proportion of the value of the entire capital stock, less the assessed value of the tangible property assessed or liable to assessment in this state, shall be the correct value of the corporate franchise of such corporation, company or association for taxation in this state."

Section 4081: "If the corporation organized under the laws of this state or of some other state or government be a railroad, telegraph, telephone, express, sleeping, dining, palace or chair car company, the lines of which extend beyond the limits of this state, the said board will fix the value of the capital stock, as hereinbefore provided, and that proportion of the value of the capital stock, which the length of the lines operated, owned, leased or controlled in this state bears to the total length of the lines owned, leased or controlled in this state and elsewhere shall be considered in fixing the value of the corporate franchise of such corporation liable for taxation in this state; and such corporate franchise shall be liable to taxation in each county, incorporated city, town or district through or into which such lines pass or are operated in the same proportion that the length of the line in such county, city, town, or district bears to the whole length of the lines in the state, less the value of any tangible property assessed or liable to assessment in such county, city, town or taxing district."

Section 171 of the constitution provides that "taxes shall be levied and collected for public purposes only. They shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax, and all taxes shall be levied and collected by general laws."

Section 174: "All property whether owned by natural persons or corporations shall be taxed in proportion to its value unless exempted by this constitution, and all corporate property shall pay the same rate of taxation paid by individual property. Nothing in this constitution shall be construed to prevent the general assembly from providing for taxation based upon incomes, licenses or franchises."

Section 181: "The general assembly may, by general laws only, provide for the payment of license fees on franchises, stock used for breeding purposes, the various trades, occupations and professions, or a special or excise tax; and may, by general laws, delegate the power to counties, towns, cities, and other municipal corporations, to impose and collect license fees on stock used for breeding purposes, on franchises, trades, occupations and professions."

Stone & Sudduth and Ramsey & Maxwell, for complainant.
W. J. Hendricks, for defendant.

BARR, District Judge. The demurrer to the bill raises: (1) The question of the jurisdiction of this court. (2) Whether or not the tax, as alleged in the bill, is upon interstate commerce, and within the inhibition of the federal constitution. (3) Is this tax, as provided by the Kentucky legislature, a violation of the constitution of Kentucky?

The jurisdiction of the court is claimed because of the diverse citizenship of the parties, and because the tax is alleged to be in violation of the federal constitution. The diverse citizenship is aptly alleged, and the amount of the tax in controversy which is sought to be enjoined, so far as it may have been for the benefit of the state, is more than $2,000, exclusive of interest and costs, and that appears upon the face of the bill. The bill, in addition to seeking to enjoin the collection of the taxes levied for the benefit of the state of Kentucky, seeks to enjoin the auditor, Norman, from certifying to the different county clerks, 68 in number, their respective proportions of the taxes assessed by the board of valuation and assessment, and alleges that these local taxes, with the tax for the benefit of the state of Kentucky, will amount to about $10,000. The aggregate of these local taxes is thus shown to be over $2,000, exclusive of interest and costs. The case, we think, is not within the principle of Fishback v. Telegraph Co. (decided by the supreme court March 2, 1896) 16 Sup. Ct. 506, and the previous case of Walter v. Railroad Co., 147 U. S. 370, 13 Sup. Ct. 348. In both of these cases it was sought to enjoin the collection of local taxes which had been assessed and levied by the respective counties and municipalities. Hence the local taxes had been distinctly separated, so that a separate action could have been maintained against the counties and municipalities, if the taxes had been paid under protest. Here it is sought to prevent the auditor from completing the appraisement and levy of taxes, which, if completed without legal authority, would be a wrongful act, and one probably subjecting him to an action by the party injured thereby. However this may be, the amount of tax in controversy between the plaintiff and the defendant, for the benefit of the state of Kentucky, is over $2,000, exclusive of interest and

costs.   The jurisdiction of the circuit court seems, therefore, to be clear, from the face of the bill.

The bill alleges, as ground for the equitable jurisdiction and the granting of an injunction, the complainant's liability to a multiplicity of suits if the assessment and levy is completed, and an irreparable injury which will be caused by the enforcement of the penalties of the law for the nonpayment of these illegal taxes.   It is the uniform practice in this state to allow an injunction to restrain either the assessment or collection of illegal taxes, and the equity jurisdiction in such cases has been frequently sustained by the court of appeals. See Louisville & N. R. Co. v. Warren County Ct., 5 Bush, 245; Gates v. Barrett, 79 Ky. 295; Water Co. v. Clark, 94 Ky. 47, 21 S. W. 246. But, independently of this uniform practice in this state, which sustains the exercise of equitable jurisdiction of injunction in such cases, the allegations of this bill, as to the multiplicity of suits, and the irreparable injury which the assessment and collection of these taxes will cause the complainant, are, we think, sufficient to sustain the equitable jurisdiction upon general principles.   Telegraph Co. v. Poe, 61 Fed. 469; Sanford v. Poe, 16 C. C. A. 305, 69 Fed. 546.   These cases are distinctly in point, as there the equitable jurisdiction was sustained because of the multiplicity of suits which would follow from the completion of an assessment, and the levy of the local taxes, which local taxes, separated, would have been less than the $2,000 limit.

The complainant is not seeking relief because the valuation and assessments of the board are excessive, but that the entire valuation and assessment is illegal and void.   It may be assumed as settled that the state of Kentucky has authority to levy and collect a tax on all of the property of the complainant, tangible as well as intangible, if within the taxing power of the state.   This right, however, is subject to certain constitutional limitations.   Hence, the state cannot tax foreign or interstate commerce as such, nor can it tax its agencies or instrumentalities in such a manner as to interfere with the regulation of this commerce, which belongs exclusively to congress.   The state may tax property within the state, though it be employed in whole or in part in foreign or domestic commerce, as that use does not, of itself, exempt it from liability to taxation as is all other property within the jurisdiction of the state.   Delaware Railroad Tax Cases, 18 Wall. 232; W. U. Tel. Co. v. Attorney General of Massachusetts, 125 U. S. 530, 8 Sup. Ct. 961; Leloup v. Port of Mobile, 127 U. S. 640, 8 Sup. Ct. 1380; Pullman's Palace-Car Co., v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876; Cable Co. v. Adams, 155 U. S. 688, 15 Sup. Ct. 268, 360.   The present inquiry is, therefore, as to the kind of tax which is sought to be imposed, and the location of the property sought to be taxed.

There is much difficulty in construing the various provisions of the Kentucky Statutes heretofore quoted.   It will be seen that the language of section 4077 is that certain corporations and companies "shall, in addition to the other taxes imposed by law, annually pay a tax on its franchise to the state and a local tax thereon to the county, incorporated city, town, and taxing district where its fran-'

chise may be exercised." A "franchise," in its legal sense, is defined by Chief Justice Taney, in Bank v. Earle, 13 Pet. 595, thus:

"Franchises are special privileges conferred by government upon individuals, and do not belong to the citizens of the country generally, of common right. It is essential to the character of a franchise that it should be a grant from the sovereign authority, and in this country no franchise can be held which is not derived from a law of the state."

If this were the only meaning of the word "franchise" in this section, many other provisions of the law would be meaningless. Thus, other provisions of this law distinctly apply, not only to corporations, but to companies and associations who have no corporate existence, and who have no franchise. They apply to domestic companies and associations, as well as to foreign companies and associations. And so the capital stock, the value of which is to be ascertained by this board of valuation and assessment, applies, by the express provisions of the other sections, to associations and companies, as well as to corporations. As we construe the law, the legislature intended that the corporations, companies, and associations named in the various sections should be treated as an entirety, and taxed as such; and in using the words "capital stock" it intended to include all of the property of these corporations, companies, and associations, and to have all of the property valued as an entirety.

The information which is required of the corporations, companies, and associations, both foreign and domestic, by sections 4078 and 4079, is for the purpose of enabling the board of valuation and assessment to value and assess the capital stock of the corporations, companies, and associations. The capital stock to be valued by the board includes the entire property, tangible and intangible, wherever situated, and from this value is to be taken all of its tangible property, wherever situated, assessed for taxation in this state or elsewhere. The value of this tangible property is to be taken from the valuation of the entire capital stock, and what remains is the value of the property which is to be taxed under the provisions of this act. Section 4079. Thus, the tax mentioned in section 4077 is not an additional tax upon the same property, but a tax upon the intangible property of the corporation, company, or association, that has not been taxed as tangible property. And it is provided in another section that, if the corporation, either foreign or domestic, "be a railroad, telegraph, telephone, express, sleeping, dining, palace, or chair car company, the lines of which extend beyond the limits of this state, that the proportion of the value of the capital stock which the length of the lines operated, leased, owned or controlled, in this state bears to the total length of the lines owned, leased, or controlled in this state and elsewhere shall be considered in fixing the value of the corporate franchise of such corporation liable for taxation in this state." The same rule is applied to local taxation authorized by counties, cities, etc., and, in addition, all tangible property locally taxed is to be deducted. Section 4081. Thus, the taxation of these corporations', companies', and associations' intangible property is taxed upon the basis of the mileage of the lines inside and outside the state. This taxation assumes that there is used in the

common business of the companies, corporations, and associations inside the state an average proportion of its intangible property.

Notwithstanding the use of the words "franchise" and "corporate franchise" in the several sections of this statute, we are of the opinion that the property to be taxed under its provisions as intangible property is not confined to franchises or corporate franchises, but it is intended to include all intangible property, by the mode indicated, whether or not such property be legally "franchises" or "corporate franchises." It is not a tax upon an occupation or franchise granted by other states or by the United States, but a tax upon the property owned and enjoyed by these several associations, companies, and corporations, which is claimed to be within the taxing power of the state. The power of taxation by a state over telegraph companies is clearly stated by Chief Justice Fuller in a recent case. He says:

"It is settled that where, by way of duties laid on the transportation of the subjects of interstate commerce, or on the receipts derived therefrom, or on the occupation or business of carrying it on, a tax is levied by a state on interstate commerce, such taxation amounts to a regulation of such commerce, and cannot be sustained. But the property in a state belonging to a corporation, whether foreign or domestic, engaged in foreign or interstate commerce, may be taxed, or a tax may be imposed on the corporation on account of its property within a state, and may take the form of a tax for the privilege of exercising its franchises within the state, if the ascertainment of the amount is made dependent in fact on the value of its property situated within the state (the exaction, therefore, not being susceptible of exceeding the sum which might be leviable directly thereon), and if payment be not made a condition precedent to the right to carry on the business, but its enforcement left to the ordinary means devised for the collection of taxes. The corporation is thus made to bear its proper proportion of the burdens of the government under whose protection it conducts its operations, while interstate commerce is not in itself subjected to restraint or impediment."

And, again, he says:

"Doubtless, no state could add to the taxation of property, according to the rule of ordinary property taxation, the burden of a license or other tax on the privilege of using, constructing, or operating an instrumentality of interstate or international commerce, or for the carrying on of such commerce; but the value of property results from the use to which it is put, and varies with the profitableness of that use, and by whatever name the exaction may be called, if it amounts to no more than the ordinary tax upon property, or a just equivalent therefor, ascertained by reference thereto, it is not open to attack as inconsistent with the constitution. Railway Co. v. Backus, 154 U. S. 439–445, 14 Sup. Ct. 1122, 1124." Cable Co. v. Adams, 155 U. S. 695–697, 15 Sup. Ct. 269, 270.

See, also, Pullman's Palace-Car Co. v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876.

In that case (Cable Co. v. Adams) the court sustained a tax upon the telegraph company which was distinctly a tax for the privilege of doing business in the state, upon the ground that it was no more than the property itself ordinarily would be burdened by an ad valorem tax; and in discussing the character of the tax as being a privilege tax, the court say:

"In marking the distinction between the power over commerce and municipal power, literal adherence to particular nomenclature should not be allowed to control construction in arriving at the true intention and effect of state legislation." Page 700, 155 U. S., and page 271, 15 Sup. Ct.

The case of W. U. Tel. Co. v. Attorney General of Massachusetts, 125 U. S. 530, 8 Sup. Ct. 961, is, we think, distinctly in point, not only in regard to disregarding the nomenclature of the state statute, but also as to the constitutionality of a tax like the one now being considered. In that case the state of Massachusetts enacted a tax law which is substantially in terms that of the Kentucky statute as to ascertaining the cash value of the capital stock of the corporations and associations either organized under its laws or foreign corporations doing business in the state, except that, in the assessment and tax complained of there, no deduction was made for real estate situated outside of the state of Massachusetts, and which was valued at over $3,000,000, and presumably taxed elsewhere, when the facts showed that there was no real estate of the company within the territorial limits of that state. That law required that a tax should be paid upon its "corporate franchise" at a valuation equal to the aggregate value of the shares of its capital stock, as determined in the mode prescribed therein, and this was made applicable to corporations or associations chartered or organized elsewhere than in the state. Justice Miller, in the course of the opinion (page 547, 125 U. S., and page 963, 8 Sup. Ct.) said:

"The argument is very much pressed that it is a tax upon the franchise of the company, which franchise, being derived from the United States by virtue of the statute above recited, cannot be taxed by a state; and counsel for appellant occasionally speaks of a tax authorized by the law of Massachusetts, upon this as well as other corporations doing business within its territory, whether organized under its laws or not, as a tax upon their franchises. But, by whatever name it may be called, as described in the laws of Massachusetts, it is essentially an excise upon the capital of the corporation. The laws of that commonwealth attempt to ascertain the just amount which any corporation engaged in business within its limits shall pay as a contribution for the support of the government, upon the amount and value of the capital so engaged by it therein."

This case has been frequently cited, and has been approved in the cases of Massachusetts v. W. U. Tel. Co., 141 U. S. 41, 11 Sup. Ct. 890, and Cable Co. v. Adams, 155 U. S. 699, 15 Sup. Ct. 270. In the case of Massachusetts v. W. U. Tel. Co., 141 U. S. 45, 11 Sup. Ct. 891, Justice Gray again says, in speaking of this Massachusetts tax, that:

"By whatever name the tax may be called, as described in the laws of Massachusetts, it is essentially an excise upon the capital of the corporation, and these laws attempt to ascertain the just amount which any corporation engaged in business within its limits shall pay, as a contribution for the support of its government, upon the amount and value of the capital so employed by it therein."

This mode of ascertaining and assessing the value of the property has been sustained by the supreme court in the case of Railway Co. v. Backus, 154 U. S. 439, 14 Sup. Ct. 1122; and also the circuit court of appeals, in Sanford v. Poe, have held a law of Ohio, not unlike this one, as not within the inhibitions of the federal constitution. See 16 C. C. A. 305, 69 Fed. 547.

This bill states with some detail the complainant's different kinds of property in this state on the 15th of September, 1893, and its value as claimed by it, and the valuation and assessment of its property on that day as made by the board of valuation and as-

sessment, and insists that there is property included therein which is not legally taxable in this state; but it nowhere alleges that the valuation and assessment by this board is not in compliance with the provisions of the Kentucky statute, nor does it seek to have the board's valuation and assessment corrected, either as to the kind of property included in the assessment or the valuation placed upon it. On the contrary, it is alleged that the complainant refused to recognize this board, or its valuations or assessments, as valid or legal in any respect whatever. As the statute does not indicate or describe the property which is to make up the capital stock required to be valued and assessed, we can only consider, now, whether the statutory mode prescribed is a violation of the federal constitution.

The allegation that the complainant has given in, and that the state has assessed, all of its property, including telegraph lines, moneys, and credits, within the state of Kentucky, and that this tax has been fully paid, when taken with the other allegations of the bill, does not show that all the intangible property which is provided for in the Kentucky statute has been legally assessed and the tax paid thereon. If, in fact, the board has, in making up the value, estimated patent rights,—that is, the monopoly granted by the United States,—or any other property which should not have been valued in making up this assessment, the bill is not drawn with a view to raise such a question. Under the Kentucky statute the intangible property of this corporation cannot be assessed, except by this board of valuation and assessment, and hence we cannot assume, from any allegation of the bill, that the property which was assessed by this board has ever been legally returned for taxation, or the taxes paid thereon. We conclude that the mode prescribed by this statute for valuation and assessment is not within the commerce clause of the federal constitution, nor do we see that it violates the provisions of the fourteenth amendment of the federal constitution. Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 233, 10 Sup. Ct. 533.

The next inquiry is whether or not these provisions of the Kentucky statute are in violation of the Kentucky constitution. Considering the tax which is assessed under the valuation and appraisement of the board as a property tax, the only inquiry, under the Kentucky constitution, is whether or not it is a uniform tax with other property taxed in the state.

Section 4020 requires:

"All real and personal property within the state, and all personal property of persons residing in the state, and of all corporations organized under the laws of this state, whether the property be in or out of the state, including intangible property, shall be considered and estimated in fixing the value of the corporate franchises as hereinafter provided, and shall be subject to taxation, unless exempted by the constitution, and shall be assessed at its fair cash value estimated at the price it would bring at a voluntary sale."

Section 4077, in describing the persons who are liable to this tax for intangible property, includes all corporations. There is, therefore, perfect uniformity as to all corporations and the rate

of tax levied thereon. The provisions of section 174 of the constitution, which require that "all property whether owned by natural persons or corporations shall be taxed in proportion to its value, unless exempted by the constitution; and all corporate property shall pay the same rate of taxation paid by individual property,"—do not preclude intangible property which is owned by a corporation from being taxed.

If individuals own intangible property which is taxable, it should be taxed like corporate property owned by corporations, under the constitution. Indeed, individuals are so taxed, in this statute, when they are associated together in companies. But if there is a kind of intangible property owned by corporations, which from its very nature cannot be owned by individuals, then there is no reason why the state should not tax that intangible property. It is not an objection to taxing property of a corporation, domestic or foreign, that no individual taxpayer has similar property. There is no allegation in this bill, and nothing in this record, which presents the question of making a discrimination between individuals owning intangible property or the corporations or associations mentioned in section 4077 owning such property. The court regrets extremely that these provisions of the constitution and of the revenue law have not been construed by the Kentucky court of appeals. There are three cases in which the matter of taxation under the present constitution has been discussed by the court of appeals. Although the question now being considered has never been decided, I understand, both from the case of Levi v. City of Louisville (Ky.) 30 S. W. 973, and Henderson Bridge Co. v. Com. (Ky.) 31 S. W. 486, that the court construed the provisions of these statutes, which require the valuation and assessment of the capital stock to include all of the tangible and intangible property of the corporation, company, or association, as herein indicated. Those cases, with the case of Association v. Norman (Ky.) 32 S. W. 952, lay more stress upon the term "franchise" than I have done in this opinion. I, however, construe the opinions in those cases to mean that "intangible property," in the revenue law, not only includes the value of franchises, but also any other property rights which the companies or the associations may own, and which are taxable.

We are of the opinion that the present bill does not present the question of what particular property may or may not be taxable in the state of Kentucky, and which might be included by the board of valuation and assessment in making up the total of its capital stock under the provisions of the revenue law of the state of Kentucky; but I simply decide that the law as it stands on the statute books does not violate either the federal or the state constitution. The demurrers in this case (No. 250), and in cases Nos. 249, 251, and 194, should be sustained, and it is so ordered.

### Opinion on Demurrer to the Bill as Amended.

BARR, District Judge. The bill as amended does not change the questions decided on the original bill. But, as the amendment al-

leges that there is a large amount of moneyed capital in the state, employed in mining, manufacturing, commercial, and other industrial pursuits, by corporations whose intangible property, at least in part, is not taxed under the Kentucky statutes, it is proper that we should indicate our construction of those statutes. The language of section 4077 is:

"Every railway company or corporation, and every incorporated bank, trust company, guarantee or security company, gas company, water company, ferry company, bridge company, street railway company, express company, electric light company, electric power company, telegraph company, press dispatch company, telephone company, turnpike company, palace car company, dining car company, sleeping car company, chair car company, and also every other like company, corporation or association, also every other corporation, company or association having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons, or performing any public service, shall, in addition to the other taxes imposed on it by law, annually pay a tax on its franchise to the state and a local tax thereon to the county, incorporated city, town and taxing district where its franchise may be exercised."

We think the words in this section, "also every other corporation, company or association having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons, or performing any public service," must include all corporations, and cannot be confined to those corporations which are of like character to those specifically named. If this be not so, the words, "also every other corporation, company or association," in this section, are meaningless, as the preceding words "every other like company, corporation or association," had theretofore been expressly included. If this construction be the correct one, then there is no discrimination between moneyed capital employed by corporations in mining, manufacturing, commercial, and other industrial pursuits, and that employed in railroads, telegraph companies, express companies, and other like companies, but the intangible property of all corporations is taxed, and taxed at the same rate. It is true that the provisions of sections 4077 and 4078 do not apply to all individual taxpayers, but a reference to section 4020 of the Kentucky Statutes, and the schedule which must be returned by each taxpayer, provided by section 4058, indicate, we think, that there is no intention on the part of the state to exempt individual taxpayers from a tax upon all of their intangible property, whatever that may be. In the description of property tax in the schedule, the first 11 articles required to be returned by taxpayers generally are of intangible property, and under the head of "Miscellany" the value of all property not mentioned specially is required to be returned. It is true that the mode of the assessment of intangible property of corporations, companies, and associations mentioned in section 4077, and that of individual taxpayers, is different, under the statutes, and it is perhaps true that the intangible property of these corporations and associations may be in some respects different from intangible property which belongs to individual taxpayers, and which is taxed; but I see nothing in the statutes which exempts any intangible property, owned by any corporation or any individual taxpayer, which is taxed

when owned by any other corporation or individual. Although, as indicated in the original opinion, we do not think that a tax levied upon intangible property is strictly a franchise tax, though called so in the statute, but a property tax, yet it is quite clear that the value of the franchise is intended to be estimated as intangible property. The 172d section of the constitution declares:

"All property not exempt from taxation by this constitution shall be assessed for taxation at its fair cash value estimated at the price it would bring at a fair and voluntary sale."

Thus, a fair cash value, and the rule for estimating such valuation, is fixed by the constitution itself. But this constitutional rule of valuation of property for an ad valorem tax does not prevent the legislature from prescribing the mode or method of ascertaining the different kinds or quantities of taxable property belonging to the several taxpayers, whether they be natural or artificial persons. Nor does it prescribe how or by whom the assessment for taxation shall be made, except as to the valuation. All else as to the mode of assessment, we think, is left within the discretion of the lawmaking power. Thus, an assessment may be made by one assessor, or by a board of assessment and valuation, and may be made in any manner that is just and equitable.

Neither does this section, nor any other provision of the constitution, confine the levy of an ad valorem tax to tangible property; but, as decided by the Kentucky court of appeals in Levi v. City of Louisville, 30 S. W. 973, it does require the levy of an ad valorem tax upon personal property as well as real estate, and this case decides that a license tax, which is not a property tax, cannot be substituted for an ad valorem tax upon personal property engaged in certain commercial pursuits in the city of Louisville. It does not decide that section 171 of the constitution, which declares that taxation shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax, applies to taxation based upon income, license, or franchise. If there is any intimation upon the subject in this case, it is that taxation which is based upon income, license, or franchise may be classified by the legislature, and, as to licenses, they may be levied upon some employments and occupations, and not upon others. If, however, we are correct in our construction of the Kentucky statutes, there is no ground for contending that there is a want of uniformity in the levy of the taxes against the defendant, even though section 171, requiring uniformity of taxation upon all property subject to taxation, applies to taxation based upon income, license, or franchise, and is given its broadest possible construction. If we are correct in our view, it is not necessary for us to consider whether the Kentucky constitution (sections 171–174) requires a taxation upon all property, tangible or intangible, within the territorial limits of the authority levying the tax, and at a uniform rate, or only requires a uniform rate of taxation upon a class of property made subject by law to taxation within the taxable limits; nor is it necessary to consider whether, if the rule of universality and

uniformity applies to an ad valorem tax, it also applies to taxes based upon income, license, and franchise. The demurrer to the bill as amended should therefore be sustained, and it is so ordered.