F. B. ARENDELL v. W. H. WORTH, State Treasurer,
And
W. H. WORTH, State Treasurer, v. EDWARD L. TRAVIS, *et al.*,
Executive Board of Directors of State Prison.

(Decided October 31, 1899.)

*Indebtedness of State Prison—Appropriations—Construction of Statute—Act 7th March, 1899—Statutes In Pari Materia—Mandamus.*

1. The Act of 7th March, 1899, (Acts 1899, chap. 607) authorizing the issue of State bonds to the amount of $110,000, was intended to raise funds for the purpose of paying off indebtedness of the State prison incurred prior to January 1, 1899.

2. There were other statutes—Act of 28th February, 1899, (chap. 342), and Act of 8th March, 1899,(chap. 679) to defray the immediate current expenses and the expenses of running the State prison for the years 1899 and 1900—the Act of 28th February, appropriating $5,000—the Act of 8th March, appropriating $50,000 for each of the years of 1899 and 1900.

3. To arrive at. the true meaning and purpose of a statute, other statutes, *in pari materia*, are to be considered and construed together—this rule of construction is to be applied to the statute of 7th March, 1899.

4. As it is the duty of the State Treasurer to keep his accounts, showing the transactions of each fiscal year, ending 31st December, he has no right to pay out money except upon proper warrants drawn upon the proper funds in the treasury.

5. The State Treasurer is not liable to a mandamus for refusing to pay a warrant improperly drawn, and he is entitled to a mandamus to enforce the drawing of proper warrants upon the proper funds before paying them, as they are his vouchers.

CONSOLIDATED CASE.

THESE TWO ACTIONS, each for a mandamus, were brought to July Term, 1899, of WAKE Superior Court, were consolidated by consent, and heard together before *Moore, J.*

The first is an action by F. B. Arendell against Worth, State Treasurer, to compel the payment of a warrant issued by the Executive Board of Directors of the State prison upon the Treasurer, covering items of indebtedness incurred both prior to January 1, 1899, and between January 1st and March 6, 1899.

The second is an action by Worth, State Treasurer, against the Executive Board, to compel them to change a warrant drawn by them upon the State Treasurer, and in favor of the State Treasurer, so as to make the warrant show upon its face that it embraced only indebtedness incurred prior to January 1, 1899.

The question involved is, whether the State Treasurer can require the Executive Board of Directors of the State prison to so itemize their warrants for the payment of indebtedness of the State prison, as to indicate the date of the indebtedness and the fund out of which it is to be paid.

The determination of this question requires the construction of the Act of 7th March, 1899, (Acts 1899, chap. 607), taken in connection with the Acts of 28th February, 1899, (chap. 342), and 8th March, 1899, (chap. 679)—all three of which acts were enacted by the Legislature of 1899, and contained appropriations for the indebtedness of the State prison.

The State Treasurer contended that the proper construction of chap. 607, Acts 1899, and statutes and resolutions *in pari materia,* required that the funds derived from the sale of bonds, provided for by chap. 607, should be applied to the indebtedness of the State prison incurred prior to January 1, 1899, and inasmuch as it was his duty to keep separate accounts of all State institutions for each fiscal year, ending 31st December, the warrants, which are his vouchers, should be so drawn as to indicate the date of the indebtedness and the fund drawn upon.

The Executive Board (through the plaintiff) contended that the purpose of the Legislature in passing the act was to provide by that appropriation for the payment of *all* debts prior to its ratification, 7th March, 1899.

The consolidated case, by consent, was heard upon the pleadings by his Honor, who decided both cases involved against the State Treasurer, and he excepted and appealed to the Supreme Court.

The pleadings, the statutes, and the judgment are summarized in the opinion.

*Messrs. Douglass & Simms* and *Zeb. V. Walser,* Attorney-General, for appellant.

*Messrs. J. C. MacRae, Argo & Snow, Shepherd & Busbee* and *R. O. Burton,* for appellee.

FURCHES, J.   The General Assembly, on the 7th day of March, 1899, passed and ratified an act authorizing the defendant, Worth, to issue and sell $110,000 (par value) North Carolina State coupon bonds, bearing interest at the rate of 4 per cent, from the 1st of January, 1899, until paid. Chap. 607, Laws 1899.   This act states that it is passed to provide a fund for the payment of the indebtedness now due on account of the conduct and management of the State's prison (the name having been changed from penitentiary to that of State prison).

On the 8th day of March, 1899, the same Legislature passed and ratified an act appropriating $100,000, $50,000 of this amount to be used for the maintenance and support of the State's prison for 1899, and $50,000 for 1900.   Chap. 679, Acts 1899.

On the 28th day of February, 1899, the same Legislature passed and ratified another act appropriating $5,000 to pay

125——8

the immediate incidental expenses of the State's prison. Chap. 342, Laws 1899.

All the money thus appropriated, and that arising from the sale of the $110,000 bonds, was only to be paid out by the defendant, Worth, upon the warrant of E. L. Travis, W. H. Osborne and W. C. Newland, constituting the Executive Board of the State prison. On the 23rd of May, 1899, this Executive Board issued to the plaintiff, Arendell, the following warrant:

"STATE'S PRISON OF NORTH CAROLINA,
                RALEIGH, N. C., May 23, 1899.

"To Hon. W. H. WORTH, *Treasurer of North Carolina:*

"Pay to F. B. Arendell, or order, out of the fund provided for the payment of the indebtedness of the State's prison by chap. 607, Laws 1899, the sum of three 32-100 dollars, in full settlement of all claims to and including the 6th day of May, 1899.

"$3.32.

                "E. L. TRAVIS,
                "W. H. OSBORNE,
                "W. C. NEWLAND,
                        "*Executive Board.*"

The defendant refused to pay this warrant, and on the 27th day of June, 1899, the plaintiff commenced this action.

The defendant, Worth, as State Treasurer, with the approval of the Governor and Council, on the 1st of March, 1898, had advanced to J. M. Mewborne, then Superintendent of the penitentiary, $35,000, for the support and maintenance of the institution, and to enable him to run the same. Said Worth, as Treasurer of State, took from said Mewborne as evidence of this advancement a written instrument in the

form of a promissory note, signed "J. M. Mewborne, Super-intendent N. C. Penitentiary," in which it is stated that the amount so advanced is to be paid with 6 per cent interest. That the Treasurer insisted that he should be secured for the money so furnished by him, and on the 1st day of April, 1898, the said Mewborne attempted to do so by executing a paper writing in which it is provided that this debt shall be a first lien on the entire crops of cotton, corn, wheat, oats, rice, and other products made on the State's farms during the year 1898, naming the different farms then being worked by the penitentiary.

Various payments have been made on this note of $35,000: $5,000, in December, 1898; $11,000, on the 4th January, 1899; $6,500, on the 9th February, 1899; $4,000, on the 13th February, 1899, and $3,638, on the 20th February, 1899. But it seems to be agreed that on the 23rd day of May, 1899, there still remained unpaid on the $35,000, for money so advanced to Mewborne, the sum of $8,462, and on that day the Executive Board issued the following warrant:

"State's Prison of North Carolina.

"To W. H. Worth, *Treasurer of North Carolina:*

"Pay to W. H. Worth, Treasurer, or order, out of the funds provided for the payment of the indebtedness of the State's prison by chap. 607, Laws 1899, the sum of eight thousand four hundred sixty-two and no one-hundredths dollars, in full settlement of all claims to and including the 6th day of March, 1899.

"E. L. Travis,
"W. H. Osborne,
"W. C. Newland,
       *"Executive Board."*

Defendant, Worth, refused to pay this warrant, and soon thereafter commenced an action against said Executive Board. Both the action of Arendell and the action of Worth being on the docket at the same time, and involving substantially the same questions, by consent of all parties, the two were consolidated by the following order, and tried together, viz.: "North Carolina—Wake County. In the Superior Court, July Term, 1899. *F. B. Arendell v. W. H. Worth, Treasurer,* and *W. H. Worth, State Treasurer, v. E. L. Travis, W. H. Osborne and W. C. Newland,* constituting the Executive Board of the Board of Directors of the State's prison of North Carolina. In the actions above entitled, by consent of all parties, it is ordered that the said actions be consolidated and heard together, and that they be tried before his Honor *Fred. Moore, J.,* holding said court, without a jury and at this term, his Honor to find the facts and to render judgment thereon. Fred. Moore, Judge Presiding." (Signed by attorneys representing both parties.)

Under this order the trial was proceeded with, when the following judgment was rendered by the Court: "The above-entitled actions having been consolidated at this term by consent, and coming on to be heard before the undersigned, a jury trial having been waived by consent, upon motion of plaintiff in the action of *F. B. Arendell v. W. H. Worth, State Treasurer,* for judgment upon the pleadings, and upon motion of plaintiff in the action of *W. H. Worth, State Treasurer v. E. L. Travis et al.,* for judgment upon the pleadings; and the facts being admitted that the warrant set out in the first-entitled action covers items of indebtedness arising both before and after January 1, 1899; and that the warrant set out in the complaint in *Worth v. Travis, et al.,* was for an indebtedness contracted for in 1898. Now, therefore, upon consideration by the Court, is is adjudged:

"1. That a writ of mandamus issue out of and under the seal of this court, directed to the said W. H. Worth, State Treasurer, commanding him to pay to the plaintiff, F. B. Arendell, the amount due upon the warrant set out in the complaint in said action of *Arendell v. Worth,* to-wit, the sum of $3.32, out of the money in his hands arising from the sale of the bonds mentioned in the pleadings.

"2. That said F. B. Arendell recover of said W. H. Worth, State Treasurer, the costs of said action, to be taxed by the Clerk.

"It is further adjudged that the writ of mandamus asked by the plaintiff, W. H. Worth, State Treasurer, in the action of *W. H. Worth, State Treasurer, v. E. L. Travis et al.,* be denied, and that said W. H. Worth, State Treasurer, pay the said warrant, described in his complaint in said action, out of the moneys in his hands arising from the sale of the bonds mentioned in the pleadings, and that the defendants E. L. Travis, W. H. Osborne and W. C. Newland recover of the plaintiff, W. H. Worth, State Treasurer, the costs of said action, to be taxed by the Clerk."

"To this judgment W. H. Worth, State Treasurer, excepted and appealed to the Supreme Court."

And the following is the statement of case on appeal as settled by the Judge: "The two above-entitled actions, each brought for mandamus, were heard before his Honor Fred. Moore, Judge of the Superior Court, at July Term of Superior Court of Wake County, by consent. A jury trial was waived by all parties, and the two actions were consolidated and heard together, under a consent order, which appears in the record. The pleadings in both actions are fully set out in the record, and reference is hereby made thereto, as part of this case on appeal.

"The plaintiff in the case of *F. B. Arendell v. W. H.*

*Worth, State Treasurer,* moved for judgment upon the pleadings in the case, and the plaintiff in the case of *W. H. Worth, State Treasurer, v. E. L. Travis et al.,* moved for judgment in that case upon the pleadings.

"It was admitted that the warrant set out in the case of *Arendell v. Worth* covered items of indebtedness arising before and after January 1, 1899, and that the warrant set out in the case of *Worth v. Travis et al.,* was for an indebtedness contracted in 1898, but that it covered all the indebtedness from the State's prison to the plaintiff up to March 6, 1899.

"His Honor rendered the judgment set out in the record, which is made a part of the case on appeal, and that W. H. Worth, State Treasurer, excepted and appealed to the Supreme Court."

So it is seen that the appeal is upon questions of law arising upon the pleadings, which must be taken as true when not contradicted.

There was a motion during the argument in this Court to dismiss the action of *Worth, Treasurer, v. Travis et al.,* which had been consolidated with the action of *Arendell v. Worth,* by consent of all parties to said actions, and by consent of all parties were heard and tried together. We fail to see the reason for this motion and refuse to dismiss.

Both actions, as we gather from the pleadings and from the argument and brief of counsel, are for the purpose of obtaining a construction of the Act of the 7th of March, 1899, chap. 607, authorizing the issuance and sale of $110,000 coupon bonds by the defendant, Worth, as State Treasurer. The plaintiff, Arendell, and the Executive Board contending that it was intended by this act to raise money to pay all the State's indebtedness arising out of transactions for the State prison, up to, and due on the 6th of March, 1899, while the defendant, Worth, contends that it was not so intended by the

Legislature, and that it was only intended to raise a fund to pay the State's liability, on account of the *management* of the penitentiary, prior to the first of January, 1899.

Both the debt to Arendell and to Worth are admitted to be due and that they should be paid. But out of what fund they should be paid seems to be considered by the Executive Board and by the State Treasurer a matter of public importance. It therefore becomes our duty to say whether the fund arising from the sale of the $110,000 bonds is liable to be drawn upon by the Executive Board for the payment of indebtedness contracted since the 1st of January, 1899, or not.

The Act of the 7th March (Laws 1899, chap. 607), has this preamble: "Whereas, there are now outstanding and unpaid divers liabilities of the State of North Carolina, arising out of the conduct and *management* of the State's prison." And sec. 1 of the act which provides for issuing the bonds is as follows: "SECTION 1. That for the purpose of paying off the indebtedness of the State of North Carolina, arising out of the conduct and *management* of the State's prison, the State Treasurer is hereby authorized and directed to issue bonds of the State of North Carolina, payable ten years after the first day of January, 1899, to the amount of $110,000, which shall express upon their face the purpose of their issue."

It is contended by the plaintiff, Arendell, and the Executive Board, that the preamble should be considered in construing the act; that the word "now," used in the preamble, gives a definite meaning to the act, and that it should be construed to mean all the indebtedness due on account of the State's prison prior and up to the date of its ratification. And it can not be well contended that there is not strength in this argument, if this act is considered alone and without

reference to other acts passed at the same session, and other recent legislation with regard to the support of the penitentiary and the payment of its indebtedness.

But it appeared from the undisputed statements of the pleadings, which are made a part of the case on appeal, that on the 8th day of March, 1899, the Legislature passed and ratified an act appropriating $100,000 to defray the expenses of running the State's prison for the years 1899 and 1900, $50,000 for 1899, and $50,000 for 1900; that on the 28th of February, 1899, the Legislature passed and ratified another act appropriating $5,000, to defray the "immediate incidental expenses of the State's prison." These acts were all passed by the Legislature of 1899; one a few days before the passage of the act to issue and sell the $110,000 of bonds (chap. 607), and the other, appropriating $100,000 for the support of the State's prison, was passed on the 8th of March, one day after chap. 607; that the Act of 1893 appropriated $25,000 to the support of the penitentiary for 1893 and 1894 (chap. 365 of the Acts of 1893); and the Legislature of 1895, on the 13th of March, appropriated the sum of $14,158.71, to pay the unpaid balance for expenses of 1893 and 1894 (chap. 408 of the Laws 1895); and by the same act (chap. 408), the Legislature of 1895 appropriated $50,000 for the support of the penitentiary—$25,000 for 1895, and $25,000 for 1896; and by chap. 275, of the Laws 1895, the Legislature appropriated an addition $10,000 for the support of the penitentiary for the years 1895 and 1896.

There seems to have been no legislative appropriation for the support of the penitentiary for the years 1897 and 1898.

It is contended for the defendant, Worth, that these acts all related to the support of the penitentiary, or State's prison, by legislative appropriation; that they are *in pari*

*materia* with the Act of the 7th March, 1899, (chap. 607), and should be taken into consideration in construing the Act of March 7, 1899; that it appears from the Act of the 27th of February (chap. 342) appropriating $5,000, and from the Act of the 8th March (chap. 679), appropriating $100,000, $50,000 of which was for the year 1899, and that this sum, $55,000, made by these two appropriations, is more than twice as much as had ever before been appropriated for any one year; that it appears from the Act of 1895 (chap. 408), that the Legislature made an appropriation of $14,158.71 to _ pay the deficiency or the balance of indebtedness due on account of the *management* of the penitentiary for the years 1893 and 1894, which defendant, Worth, contends strongly tends to support his contention that the Act of the 7th of March was to provide for the payment of the deficiency of 1897 and 1898.

It also appears that the present Superintendent had caused an investigation to be made, by competent experts, of the *management* and indebtedness of the penitentiary up to the 1st day of January, 1899, and that it was found to be $110,000—this may not be entirely correct, but it is the amount found to be due by such investigation; and that he had reported the same to the Governor; that this was the indebtedness that the Legislature was providing for by the issue of the $110,000 bonds under chap. 607, Laws 1899; that it was, in substance, doing the same thing that the Legislature had done in 1895 by appropriating $14,158.71 to be used in paying the unpaid balance due on account of the *management* of the penitentiary for the years 1893 and 1894; that the fiscal year of the penitentiary ends on the 31st day of December of each year (Laws 1897, chap. 219, sec. 9); that it is the duty of the Treasurer of the State to keep his accounts, showing the transactions of each fiscal year, and

to report the same to the Governor (Code, secs. 3356, 3360, 3361 and art 3, sec. 7 of the Constitution); that he has no right to pay out money except upon the warrant of the Auditor, the warrant of the Governor in a few specified instances, and, by the Legislature of 1899, upon the warrant of the Executive Board of the State's prison, and that these warrants are his vouchers, and must be drawn upon the proper funds in the treasury, or they are no legal protection to him. It, therefore, becomes a matter of vital importance to him to know whether the fund now in the treasury, arising from the sale of the $110,000 bonds authorized by chap. 607, is liable for the payment of the current expenses of the penitentiary for the year 1899.

The plaintiff, Arendell, and the Executive Board say that it is so liable. They say that they had drawn out of the treasury for the support and management of the State's prison up to July 1st, for the current expenses of 1899, the sum of $34,992.14. This would leave of the $55,000 appropriated by the two Acts of 1899, chap. 342, and chap. 679, a balance in the treasury of $20,118. But the plaintiff and the Executive Board contend that unless they are allowed to draw on the fund arising from the sale of the $110,000 bonds (chap. 607), many debts due by the State's prison must go unpaid. This, of course, would be unfortunate—they would likely be provided for. But it is only reasonable to suppose that the Legislature thought, when it appropriated $55,000 for the support of the State's prison for the year 1899, (more than twice as much as had ever been appropriated for any one year before), that that amount would be sufficient to pay its running current expenses.

We are of the opinion that these acts are *in pari materia* with the Act of the 7th of March, 1899, chap. 607. *Wilson v. Jordan,* 124 N. C., 683, and authorities therein cited.

Taking and considering these acts together, as we must do, we can not believe it was the intention of the Legislature that the funds arising from the sale of the $110,000 bonds under said act, chap. 607, was intended to be used to defray the *current* expenses of the State's prison for the year 1899. To state the case, it seems to us, is to furnish the argument against the contention of the plaintiff and the Executive Board. It could not have been the intention of the Legislature to add an additional fund to the $55,000 specially provided by the other acts for the support of the State prison for the year 1899.

We, therefore, hold that this fund is not liable for the payment of the warrants of the Executive Board of the State's prison for the current and other expenses of the year 1899, and that there is error in the judgment appealed from.

The judgment appealed from is reversed. The plaintiff, Arendell, is not entitled to judgment, and it appearing that the Executive Board has in its possession data from which it is enabled to separate the indebtedness existing prior to the 1st day of January, 1899, from that created since that date, the defendant, Worth, State Treasurer, is entitled to a writ of mandamus as prayed for by him.

Reversed.