PITTSBURG LIFE AND TRUST COMPANY v. JAMES R. YOUNG, COMMISSIONER OF INSURANCE.

(Filed 15 November, 1916.)

**1. Taxation—License Tax—Foreign Corporations.**

Foreign corporations do business here by comity of the State, and the latter may impose a license tax as a condition upon which such corporations may do business here under the protection of our laws, where such is not an interference with interstate commerce, or the tax otherwise invalid.

**2. Same—Gross Earnings.**

A license tax imposed as a condition upon which a foreign life insurance company may do business here may be fixed by a percentage upon its gross earnings within our borders.

**3. Same—Statutes, Interpretation.**

The various statutes contained in Schedule B of our revenue laws, taxing gross earnings within our borders of foreign life insurance companies, brought forward in section 5175 of the Revisal and subsequent statutes, and section 4515 of the Revisal, codifying and classifying the insurance laws, should be construed as a whole as constituting one scheme of taxation, and, thus construed, it is *Held,* that the tax imposed upon the gross earnings of such companies derived within the State is a license or occupation tax.

**4. Same—Direct Remittance.**

Where a foreign life insurance company has acquired business by reinsurance from other foreign companies, the policies being on the lives of residents of this State, who remit their premiums direct to the home office, the company by receiving remittances in this manner may not escape taxation to that extent upon its gross earnings, derived within the State, for the license tax imposed by the statutes is not a tax upon the receipts, but a tax equal to 2½ per cent on their gross amount, and not confined to cash received or collections actually made within our borders.

**5. Taxation—License Tax—Gross Receipts—Constitutional Law—Commerce.**

> The license tax imposed upon the gross receipts of insurance companies on business written within the borders of our State, Revisal, secs. 5175, 4515, is not in contravention of the fourteenth amendment to the Constitution of the United States, as to due process and the equal protection of the law, nor a burden upon interstate commerce, being restricted to intrastate commerce, and not extending beyond the boundaries of the State.

CIVIL ACTION tried before *Bond, J.,* at July Term, 1916, of WAKE.

The suit was brought to recover certain license taxes which had been paid by the plaintiff, under protest, to the defendant for the privilege of carrying on its business in this State, and was heard upon demurrer to the complaint, which, in substance, is as follows:

The plaintiff, complaining, alleges:

1. That it is a corporation duly created, organized, and existing under and by virtue of the laws of the State of Pennsylvania, having its principal office and place of business in the city of Pittsburg, where it is conducting, among other things, a life insurance business.

2. That the defendant, James R. Young, is Insurance Commissioner for the State of North Carolina.

3. That in the year 1906 the plaintiff took over and assumed a large number of policies of life insurance which had been issued from time to time to residents of the State of North Carolina by the Security Trust and Life Insurance Company, a corporation organized under the laws of the State of Pennsylvania and having its home office in Philadelphia, Pennsylvania; that in the year 1908 the plaintiff took over and assumed a large number of policies of life insurance which had been issued fom time to time to the residents of the State of North Carolina by the Washington Life Insurance Company, a corporation organized under the laws of the State of New York and having its home office in New York City; that at the time of the said reinsurances this company was not licensed to transact business in the State of North Carolina and was not transacting business therein, and contracts of reinsurance between the said two companies and this plaintiff were executed and delivered beyond the boundaries of the State of North Carolina, one contract being executed and delivered in the State of New York and the other contract being executed and delivered in the State of Pennsylvania; that in the year 1910 the plaintiff applied to the Insurance Commissioner of the State of North Carolina for a license to transact business in the said State, and received a license so to do 1 April, 1910, and thereafter it has continued to be licensed and has transacted business in the said State of North Carolina, and

from time to time it has issued policies of life insurance to residents of the said State; that by the terms of all of the said policies so issued by the plaintiff and issued by the companies reinsured the premiums are payable at the home office of the company issuing the same.

4. That, as it is advised and believes, and so alleges, it was, under the laws of the State of North Carolina, liable for a license tax on the 31st day of December and on the 30th day of June of each year of 2½ per cent only on the premiums collected by it in said State from its policyholders, including policyholders whose policies had been reinsured as heretofore stated, residing in said State of North Carolina, and that it was not liable for said license tax upon the premiums collected by mail at the home office from its policyholders.

5. That the said Insurance Commissioner required it to pay to him a license tax upon all premiums collected by it from its policyholders residing in the State of North Carolina, whether collected within the State of North Carolina or collected by it at its home office by mail, upon the penalty of the revocation by him of its license to do business in North Carolina if it should fail to pay the same.

6. That in the years 1912, 1913, and 1914 plaintiff paid to the defendant, under its protest that the execution of the same as part of its license tax was illegal, the aggregate sum of $2,561.52, having theretofore paid to him the full amount of the said license tax admitted to be due, and that the payment of that part of the tax claimed to be illegal was paid by plaintiff under protest to prevent a revocation of its license, which was threatened by the defendant.

7. That, as plaintiff is advised and believes, and so alleges, the demand by the State from the plaintiff of a tax measured by premiums received in Pennsylvania on policies issued by other companies to residents of North Carolina and assumed by the plaintiff before it was licensed to do business in this State is a violation of the fourteenth amendment to the Constitution of the United States, and that likewise a tax measured by the premiums received in Pennsylvania on any policy issued by the plaintiff to residents of North Carolina after it was licensed to do business in this State is a violation of the said fourteenth amendment.

8. That, as the plaintiff is advised and believes, and so alleges, it is entitled to recover from the said Insurance Commissioner the aggregate sum of $2,561.52.

Wherefore, the plaintiff demands judgment that it recover against the defendant the sum of $2,561.52, and the costs and disbursements of this action.                              JOHN W. HINSDALE,
                                                        *Plaintiff's Attorney.*

In order to get a precise understanding of the question involved in this appeal, it will be necessary to set forth here those parts of our statute law relating to the subject. The provisions of the Revisal 1905 are as follows:

Section 4715 (2): "All of said companies shall pay a tax of 2½ per centum upon the amount of their gross receipts in this State."

Section 4719: "Every general agent shall, within the first thirty days of January and July of each year, make a full and correct statement, under oath of himself and of the president, secretary, or some officer at the home or head office of the company in this country, of the amount of the gross receipts derived from the insurance business, under this chapter, obtained from residents of this State, or on property located therein, during the preceding six months, and shall within the first fifteen days of February and August of each and every year pay to the Insurance Commissioner the tax imposed by this chapter upon such gross receipts."

Section 4720 provides: "That every policyholder shall, on demand of the Commissioner, furnish information of all insurance held by him, to enable the Insurance Commissioner the better to enforce the payment of the taxes imposed by this chapter."

Section 4806: "All contracts of insurance on property, lives, or interests in this State shall be deemed to be made therein; and all contracts of insurance the application for which is taken within this State shall be deemed to have been made within this State, and shall be subject to the laws thereof."

The above extracts are taken from the chapter in the Revisal on Insurance.

It is provided by the Public Laws of 1911, ch. 46, sec. 26, and by Public Laws of 1913, ch. 201, sec. 26 (known as the Revenue Act), as follows: "Taxes in this schedule shall be imposed as license taxes for the privilege of carrying on the business or doing the act named, and nothing in this act contained shall be construed• to relieve any person or corporation from the payment of tax as required in the preceding schedule [property tax schedule]. The license issued under this schedule shall be for twelve months and shall expire on the thirty-first day of May of each year. Such license thus obtained shall be a personal privilege, and shall not be transferable nor any abatement in the tax allowed; and unless otherwise provided in the section levying the tax, the tax levied for the use and benefit of the State shall be collected in the county in which the business is conducted."

Each of said acts has this provision in it: "All of said (insurance) companies shall pay a tax of 2½ per centum upon the amount of their

gross receipts in this State," which clause is taken from section 67 of chapter 46, and chapter 201 (Schedule B) above mentioned. The same provision also appears in Revisal, sec. 5175, it being a part of Revisal, chapter 110, entitled "Revenue Act," and of paragraph .V, entitled "Schedule B, Licenses."

Sections 4719 and 4720 require general agents of insurance companies within the first thirty days of January and July of each year to make "a full and correct statement, under oath, of the amount of the gross receipts derived from their business, obtained under said chapter 110, from residents of this State," and to pay to the Insurance Commissioner within the first fifteen days of February and August the tax upon such gross receipts.

At the hearing of the case the court sustained the demurrer, and the plaintiff appealed.

*John W. Hinsdale and Frank Ewing for plaintiff.*
*T. W. Bickett and T. H. Calvert for defendant.*

WALKER, J., after stating the case: The right of a State to lay a tax on a foreign corporation, or to impose other burdens as a condition of its entering its borders for the purpose of conducting its business or a part of it there is well established by the authorities. No State is bound, except as a matter of comity, to recognize corporations created by other States or to permit them to transact business within its limits; and therefore each State may impose such conditions and burdens, in respect to taxation, as it may choose, upon foreign corporations desiring to establish business within its borders, exploit its resources, enter its markets, and enjoy the benefits and protection of its laws, subject only to the restriction that its tax laws must not operate as an interference with foreign or interstate commerce, or unjustly discriminate between different foreign corporations of the same class after they have been admitted to do business within the State and complied with the conditions originally imposed. 36 Cyc., 857, 858.

There are some limitations on the powers of a State with reference to imposing burdens upon a foreign corporation which have been recognized by the courts, but they need not be discussed here, as no such question arises in this case.

It is within the power and discretion of each State to impose an annual or other license or privilege tax on all foreign corporations doing business within its limits; and it is no valid objection that such tax is higher than that imposed on similar domestic corporations. Although a tax of this kind is often spoken of as a franchise tax, it is to be observed that the State cannot tax a foreign corporation in respect

to its franchise of corporate existence, the right to be a corporation, but that the privilege of doing business in a given State, in its corporate character, may be considered as a franchise and taxed as such.

A license or privilege tax on foreign corporations may be graduated according to the amount of their capital stock, and so. much of the capital of a corporation as is employed in a given State may be there taxed. 37 Cyc., 860 and 861. It is held that "a tax on the gross earnings or receipts within the State of ·a foreign corporation is a proper and legitimate exercise of the taxing power, as it is in reality a tax on the privilege of doing business within the State measured by the volume of business transacted; but the Legislature must provide some method of ascertaining the amount of the gross receipts and prescribe the rate of taxation." 37 Cyc., 863 and 864, and note containing many cases on the subject.

It is well settled, then, that a tax for the privilege of carrying on business in a State, or a franchise tax, may be imposed by the latter upon a foreign corporation, and the amount of it may be fixed on the basis of a percentage of its gross receipts from business or property, provided the business is transacted in the State from which receipts are derived or the property is located there. *So. B. and L. Assn. v. Norman,* 98 Ky., 294 (*s. c.,* 31 L. R. A., 41; 56 Am. St. Rep., 367, and note at p. 374); *Pacific Exp. Co. v. Seibert,* 142 U. S., 339.

The questions then recur as to whether the tax laid by the statute upon the "gross receipts in this State" of the plaintiff is a license or franchise tax, and whether the term employed restricts the tax to moneys actually received in this State or extends to such portions of plaintiff's earnings on business in this State as are remitted directly to it in Pittsburg, Pa., by checks of its policy-holders given for premiums and mailed to it there. This is stating the latter question as broadly for the plaintiff as it could desire.

That the tax is for the privilege of doing business in this State appears conclusively from a consideration of the history of this clause as it appears in the various statutes on the same subject, and which constitute as a whole one scheme of taxation. The expression, "gross receipts in this State," originated in the Revenue Act many years ago, and is found in that act as brought forward in the Revisal as chapter 110 (sec. 5175) and subsequent statutes. It was also placed in the insurance laws, which were brought forward and codified as chapter 100 (sec. 4715), so that the entire body of insurance law might be consolidated; but this did not change, and was not intended to change, the nature of the tax as one for the privilege of doing business in this State. As found in the Revenue Act, it is in Schedule B, which

embraces only license and privilege taxes, and it is so declared in the preamble or caption of the act, and the manner of laying the tax itself shows the intention that it should be nothing more than a privilege or business tax. The mere fact that it was measured by the amount of gross receipts does not make it any the less a privilege tax, but that is only the adoption of a fair and just standard by which to gauge its amount, and it is not at all unusual to graduate such a tax by the extent or volume of the licensee's business in the particular locality. Besides, the companion statutes above set forth clearly indicate the purpose of the Legislature that it should be an occupational tax for the privilege of doing business. It is competent to consider such statutes for the purpose of construction of the one in question. *Board v. Comrs.,* 137 N. C., 67; *Arendell v. Worth,* 125 N. C., 111; *Abernethy v. Comrs.,* 169 N. C., 631; *Grocery Co. v. Bag Co.,* 142 N. C., 179.

Having determined what kind of tax this is, we proceed to the next question, as to what the term "gross receipts in this State" means.

The plaintiff contends that it does not embrace premiums paid by policy-holders directly to the company at its home office in Pittsburg, Pa., by checks or drafts mailed by them to it, but that it only embraces money actually collected or received in this State. This, though, is a clear misconception of its true meaning. It is not taxation of the receipts, but a tax equal to 2½ per cent on their gross amount, and it is not confined to cash or other collections in this State to the exclusion of the premiums paid directly by check to the home office, as the tax is one on the income or earnings from the business done in this State, however received by or paid to the company. The standard is the volume of the earnings and not the method of payment. Any other interpretation would render the legislation nugatory and disappoint the clear intention of the Legislature. The statute could easily be evaded and nullified; and while this reason should not be considered, if the meaning is perfectly clear, so that there is no room for construction, it is a legitimate circumstance to be considered in ascertaining the meaning where construction is necessary. But the Revenue Law shows, without any doubt, that the "receipts" intended were those derived from its business in this State.

This question, regardless of the light to be obtained from cognate statutes, was considered, and a contention similar to that of plaintiff in this case was fully answered in *Phila. and R. R. R. Co. v. Commonwealth,* 104 Pa. St., 80, 82, where the Court said: "It is argued by the able and ingenious counsel of the defendant that the taxability or otherwise of the gross receipts depends upon the relation of the taxing act

to those into whose hands they come; in other words, that the expression 'gross receipts of said company' means the gross amount received by said company, and that, as the company, as such, received nothing, it had no gross receipts. We do not so understand the act. As we construe it, 'gross receipts' is equivalent to 'gross increase' or 'gross earnings,' and we think that their origin and ownership, rather than the hands into which they come, must be considered in determining the question whether they are taxable or not." But the case of *Com. v. Eq. L. A. Soc. of U. S.,* 249 Pa. St., is, perhaps, a full authority for our view of the case. There it is said: "The annual tax upon premiums of insurance companies of other states or foreign governments shall be at the rate of 2 per centum upon the gross premiums of every character and description received from business done within this Commonwealth. . . . It seems, however, that the premiums for insurance written and maintained upon the lives of residents of Pennsylvania are not all paid to these agencies in Pennsylvania. Some of them are sent to the home office in New York, or are paid to the society through agencies outside the State of Pennsylvania. In making up its returns for taxation for the years 1906 to 1910, inclusive, the society did not include these premiums paid by residents of Pennsylvania for insurance upon their lives which were sent to points outside the State. . . . In order to determine the question in controversy we must ascertain the source of the premiums which were paid to agencies outside the State. If they were received by the society from business done within the Commonwealth, then they were subject to the tax. If they did not come from such business, they were not subject to the tax. . . . When it (the insurance company) comes within our borders to do business, it renders a service; it furnishes protection and indemnity to its beneficiaries, residents of the State of Pennsylvania. That is the business which it does in Pennsylvania, and that is the purpose for which it seeks and is granted permission to enter. Furnishing that service, that insurance against loss, it makes a proper charge to cover the cost of the service which it renders, and that charge is the premium. It is simply payment for the valuable service it renders. Whether that service be paid for on the spot where the service is rendered or whether the amount be remitted to the home office does not change the character of the business done and for which recompense or payment is made. If it happens to be made to an agency in Pennsylvania, the defendant society admits without question that it is received from business done within this Commonwealth, and is subject to the tax. How can the fact, or the character, of the business done for the benefit of residents of Pennsylvania be altered or affected in

any way by the manner in which or the place where the payment for the business done and the service rendered is made? Clearly, it cannot be so affected." That case was taken by writ of error to the Federal Supreme Court, and, the construction of its own statute by the State court being accepted as final, it was held that the Legislature acted well within its power when it laid the tax as one for the privilege of doing business in the State, and that there was no infraction of the Federal Constitution or any of its amendments. *Eq. L. Ass. Soc. of U. S. v. Com. of Pa.,* 238 U. S., 143. *Justice Holmes,* writing for this Court, said: "These policies of life insurance, according to the statement of the plaintiff in error, are kept alive and renewed to residents of Pennsylvania by payments from year to year. The fact that the State could not prevent the contracts, so far as that may be true, has little bearing upon its right to consider the benefit thus annually extended into Pennsylvania in measuring the value of the privileges that it does grant. We may add that the State profits the company equally by protecting the lives insured, wherever the premiums are paid. The tax is a tax upon a privilege actually used. The only question concerns the mode of measuring the tax. As to that, a certain latitude must be allowed. It is obvious that many incidents of the contract are likely to be attended to in Pennsylvania, such as payment of dividends when received in cash, sending an adjuster into the State in case of dispute, or making proof of death. It is not unnatural to take the policy-holders residing in the State as a measure without going into nicer if not impracticable details. Taxation has to be determined by general principles, and it seems to us impossible to say that the rule adopted in Pennsylvania goes beyond what the Constitution allows," citing *Flint v. Stone Tracy Co.,* 220 U. S., 107, 162, 163; *Conn. Mut. L. Ins. Co. v. Spratley,* 172 U. S., 602, 611; *Penn. L. Mut. F. Ins. Co. v. Meyer,* 197 U. S., 407, 415.

As our Revenue Act expressly classifies this as a license tax imposed for the privilege of doing business in the State, it would seem that upon all questions presented by this record the cases just cited are ample to sustain the ruling below.

The reliance of the plaintiff upon the fourteenth amendment to the Federal Constitution is futile in view of those decisions and *So. B. and L. Assn. v. Norman, supra,* where the cases are collated; and equally untenable is the position that the tax is a burden upon interstate commerce. It is restricted to an intrastate transaction and does not extend beyond the boundary of the State, for it is distinctly a tax for the privilege of doing business within and not without the State. It was said in the *Norman case, supra* (at p. 43), where there is an elaborate

discussion of the question, backed by the highest authority: "It is argued that the freedom of commerce between the States is interfered with, and the equal protection of the laws denied the corporation. The statute, whatever may be said of the nature of the tax it imposes, in express terms affects only business done within the State. The business—traffic or commerce, if you please so to term it—of the corporation is purely internal or domestic. Having under consideration the validity of a tax imposed on a Nebraska express company by a Missouri statute (act 16 May, 1889) similar to the one now in question, the Supreme Court, by *Justice Lamar,* after quoting the statute, said: 'It is manifest that these provisions of the statute, so far from imposing a tax upon the receipts derived from the transportation of goods between other States and the State of Missouri, expressly limit the tax to receipts for the sums earned and charged for the business done within the State. This positive and oft-repeated limitation to business done within the State, that is, business begun and ended within the State, evidently intended to exclude, and the language employed certainly does exclude, the idea that the tax is to be imposed upon the interstate business of the company. Business done within the State cannot be made to mean business done between the State and other States.' "

It will be observed that our statutes above mentioned are *in pari materia,* and when considered together, as they should be (Black on Inter. of Laws, p. 331, and note 44 *et seq.*), levies the tax upon "the amount of the gross receipts derived from the insurance business under this chapter obtained from residents of this State," a purely domestic or intrastate subject, having no direct or even indirect connection with any interstate business of the company; and the case, therefore, falls naturally and easily within the principles so clearly set forth by *Justice Holmes* in the case above cited and by the State court in the *Norman case, supra.*

The plaintiff further contends that if the law is against it on all other features of the case, the State cannot lay even a privilege tax upon the gross receipts of any business done by the State under the policies of foreign companies, held by residents of the State, which it had reinsured. But this manifestly is a fallacy. The privilege which it enjoys under those policies by its reinsurance is to continue that insurance in the State by receiving the renewal premiums from time to time as they mature or become due, as that is "doing business" in this State. *L. Ins. Co. v. Meyer,* 197 U. S., 407; *M. L. Ins. Co. v. Spratley,* 172 U. S., 602. Its license, therefore, covered those transactions, as well as any other insurance it then had, which had been

originally granted by it in this State to residents thereof, and also all new insurance. It can make no difference how it acquired the right to control the policies, whether by reinsurance or by issuing them in the beginning as its own policies. It is the gross earnings from business carried on, under all of its policies, after it obtained license, which is taken into account by the law as the standard for fixing the tax. It is as much a privilege to do business under the old policies as it is under the new ones, for business does not end with the issuing of policies, but the collection of premiums afterwards is as much within that designation as is the issuing of the policies themselves. If the companies whose policies plaintiff reinsured had continued to carry them without any reinsurance, they would have been liable for the tax; and why, therefore, should plaintiff be exempt therefrom?

The last contention is that if this is a property tax, it violates the fourteenth amendment of the Federal Constitution, being an attempt to take property without due process of law, and a denial of the equal protection of the law, as it taxes property not within this State. This position is equally without any merit and wholly untenable. What we have already said is a full answer to it. There has been no effort to tax property beyond the limits of the State. The tax, by positive words of the statute, is restricted, for its measure, to transactions and property in the State, that is, to insurance and collections of premiums, or gross earnings from the said business "in the State." This objection to the tax is completely answered by the Pennsylvania cases and the *Norman case, supra,* and no further discussion could possibly add any force to what is so well said there. As said in *Flint v. Stone Tracy Co.,* 220 U. S., at p. 162, "This argument confuses the measure of the tax upon the privilege with direct taxation of the estate or thing taxed."

If the position of the appellant were sustained by us it would not only practically nullify the statute, but greatly hamper the State in the proper exercise of her sovereign power of taxation upon subjects wholly within her borders, and seriously curtail her legitimate revenues.

The court rightly sustained the demurrer and dismissed the action.

Affirmed.